MARTHA J. SMITH, as Executrix of MARY J. SMITH, Deceased, Appellant, v. MICHAEL F. LOUGHMAN et al., Constituting the State Tax Commission, Respondents.

Tax — transfer tax — constitutional law — validity of classification for purposes of taxation — special burden laid upon members of a group discriminatory notwithstanding special privilege is granted to members of another — article 10-A of Tax Law providing for transfer tax upon succession to property of non-residents within this State invalid.

1. Classification for purposes of taxation may be supported by many considerations of expediency or fairness and, none the less, may be illegal if it denies to the citizens of any State the privileges and immunities that belong to citizens of another.

2. A special burden laid upon the members of a group as the price of a given act does not cease to be discrimination because a special privilege is granted in connection with another and unrelated act. One who wishes to do the first may never wish to do the second.

3. Article 10-A of the Tax Law (L. 1925, ch. 143, § 9; Cons. Laws, ch. 60) imposing a tax on transfers by will or intestate succession of property of non-residents within this State, in some instances vastly heavier and in other instances lighter than the amount imposed on like transfers of property of residents, non-residence without more

being made the basis for the divergent burdens of one class and another and the inequalities persisting whenever certain classes of non-residents are compared with like classes of residents, is violative of section 2 of article 4 of the Federal Constitution declaring the citizens of each State to be entitled to the privileges and immunities of citizens in the several States.

*Smith* v. *Loughman*, 220 App. Div. 790, reversed.

(Argued May 31, 1927; decided July 20, 1927.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 11, 1927, which confirmed a determination of the State Tax Commission assessing a transfer tax upon the estate of Mary J. Smith, deceased, a non-resident of the State.

*Joseph F. McCloy, John L. McMaster, Edward H. Pattison* and *Herbert W. Smith* for appellant. Article 10-A involves arbitrary and unequal regulations, prescribes different rates of taxation on property or persons in the same condition and discriminates between residents and non-residents in the imposition of this tax. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Maxwell* v. *Bugbee*, 250 U. S. 525; *Frick* v. *Pennsylvania*, 268 U. S. 473; *Watson* v. *State Comptroller*, 254 U. S. 122; *Travelers' Ins. Co.* v. *Conn.*, 185 U. S. 364; *Travis* v. *Yale & Towne Co.*, 252 U. S. 60.) Expediency is no justification for the flat-rate tax on non-residents. (*Schlesigner* v. *Wisconsin*, 270 U. S. 230; *Matter of McMullen*, 199 App. Div. 393; 236 N. Y. 518; *Matter of Lowell*, 208 App. Div. 201; 239 N. Y. 532; *Matter of Gates*, 243 N. Y. 193; *Rhode Island Hospital Trust* v. *Daughten*, 270 U. S. 69.)

*Albert Ottinger, Attorney-General* (*Henry S. Manley* of counsel), for respondents. The classification for tax purposes between transfers from residents and transfers from non-residents is not arbitrary. It rests upon real differences to which the different treatment for tax

purposes is appropriate. (*State Tax on Foreign-held Bonds*, 82 U. S. 300; *Knowlton* v. *Moore*, 178 U. S. 57; *New York Trust Co.* v. *Eisner*, 256 U. S. 345; *Keith* v. *Johnson*, 271 U. S. 1; *Matter of Merriam*, 141 N. Y. 479; 163 U. S. 625; *Home Trust Co.* v. *Law*, 204 App. Div. 590; 236 N. Y. 607; *Stebbins* v. *Riley*, 268 U. S. 121; *Bell's Gap R. R.* v. *Pa.*, 134 U. S. 232; *Magoun* v. *Illinois Trust & Savings Bk.*, 170 U. S. 283; *Bd. of Education* v. *Illinois*, 203 U. S. 553; *Keeney* v. *New York*, 222 U. S. 585; *Maxwell* v. *Bugbee*, 250 U. S. 525; *Watson* v. *State Comptroller*, 254 U. S. 122; *Bankers Trust Co.* v. *Blodgett*, 260 U. S. 647.) The different treatment does not discriminate against non-residents or their estates. (*Maxwell* v. *Bugbee*, 250 U. S. 525; *Travelers' Ins. Co.* v. *Connecticut*, 185 U. S. 364; *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60; *Gen. Am. Tank Car Corp.* v. *Day*, 270 U. S. 367; *Hanover Ins. Co.* v. *Harding*, 272 U. S. 494.)

CARDOZO, Ch. J. Mary J. Smith, a resident of the State of Connecticut, died in November, 1925, leaving real and personal property which she devised and bequeathed to her four children. Included in her property was a parcel of real estate in the city of New York of the value, above the incumbrances, of $29,490.87, the value of the share of each child being thus $7,372.72. If the testatrix had been a resident of New York, the transfer of these shares by will would have been subject to a tax of $23.72 for each, or $94.90 for all. The tax as to each would have been computed at the rate of one per cent after allowance of $5,000, the statutory exemption. Because the testatrix was a non-resident, the four shares must bear a tax of $589.98. The question is whether such discrimination can be reconciled with that provision of the Constitution of the United States whereby " the Citizens of each State " are declared to be " entitled to the Privileges and Immunities of Citizens in the several States " (U. S. Constitution, art. IV, § 2).

Until the adoption of article 10-A of the Tax Law in 1925 (L. 1925, ch. 143, § 9; Cons. Laws, ch. 60), the transfer tax in this State was imposed at the same rate and was subject to like exemptions and deductions whether the transfer was by resident or non-resident.  The rate varied with the relationship between the testator and the devisees or legatees.  A gift to a child, for illustration, was subject to an exemption of $5,000, and was taxed at one per cent upon the first $25,000 of the excess, and at higher rates upon successive increments.  A gift to a friend, if for not more than $500, was free from any burden, and was taxed, if for a larger sum, at rates varying with the value from five per cent to eight.  In the computation of the value, deductions were allowed for the debts and expenses of the estate, or the part thereof borne by the interest subject to the tax, the burden being proportioned to the clear market value of the property transferred.  For the ascertainment of these facts there was need of an elaborate procedure which was laborious and at times vexatious even when followed in the jurisdiction of the domicile.  Complaints were heard at times that the vexations were excessive when the procedure had to be followed, not in one State, but in several.  The ascertainment of the tax in a subsidiary jurisdiction had to wait upon the ascertainment of the debts and the winding up of the estate in the place of primary administration.  This made the process of assessment dilatory and expensive, to the prejudice at times of the State and at times also of the taxpayer, whose property might be tied up until the assessment was completed.  Evils such as these were from time to time recounted and deplored in the official reports of the State Tax Commission.  They are not peculiar by any means to the assessment of taxes upon the estates of non-residents.  Many of the same hardships or inconveniences are incidental to the administration of the estates of residents.  The difference is chiefly this, that the non-

resident has an added grievance in going through the process more than once, at home and then abroad.

The Legislature of 1925, acting no doubt upon the recommendation of the Tax Commission of the State, split the system of transfer taxes into two parts. Under the Tax Law as thus amended, there is one scheme of taxation for transfers by residents, and another for transfers by non-residents. The tax upon transfers by will or intestate succession where the owner of the property was at death a resident of the State, is governed by article 10. It is substantially what it was before. The tax upon transfers by non-residents is governed by a new article of the statute, known as 10-A. Under this article a tax is imposed whenever the subject of the transfer is " real or tangible personal property within this State," shares of stock in domestic corporations or in national banking associations located in this State, interests in partnerships doing business in this State, or capital invested in business in the State (§ 248). The tax is to be three per cent of the clear market value, *i. e.,* the value after deducting a proportionate share of the debts and expenses of administration (§§ 248-a, 248-b). If, however, the executor or administrator prefers, he may waive the right to such deductions, and pay a flat rate of two per cent (§ 248-b). Such a choice will be profitable whenever the debts and expenses are less than a third of the gross estate subject to taxation. So, in the case at hand, the executrix elected to pay the flat rate of two per cent if the estate was to be taxed at all. A flat rate of two per cent upon the value of the gross estate is, however, a much heavier burden, as already pointed out, than the devisees would have had to bear if the testatrix had been at the time of her death a resident of New York. So it must always be when the gift is moderate in amount and goes to husband or wife or persons very near of kin. There is nothing in the record to give support to a belief that the flat rate will so lessen the cost of collection as to reinstate equality

(cf. *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60, 81). Even without the alternative now offered by the statute — the alternative of a flat rate or a higher one with deductions — an executor who found it too expensive to establish the net value of a legacy by making proof of the debts, was free, with the consent of the legatee, to abandon the deductions and pay upon the gross. Reports are necessary even now, and also appraisals of market value, and appeals where there is error. True, of course, it is that with changes in the class of donees or in the value of the gift, the comparative results will differ. For illustration, the tax on a legacy of $5,000 to a father, mother, husband, wife or child is $100 for a non-resident, and for a resident nothing; on a legacy of $10,000, $200 for a non-resident, and for a resident $50; on one of $50,000, $1,000 for a non-resident and for a resident $650; on one of $100,000, $2,000 for a non-resident and $1,650 for a resident; on one of $250,000, $4,000 for a non-resident, and $4,600 for a resident. On the other hand, the tax on a legacy of $500 to a friend is $10 for a non-resident, and nothing for a resident; on one of $10,000, $200 for a non-resident and $500 for a resident; on one cf $100,000, $2,000 for a non-resident, and for a resident $5,750. The non-resident suffers in the intimate and lower schedules and gains in the remote and upper ones. Such is the setting of fact in which the legal problem is imbedded.

The State does not establish the validity of this act by showing that from certain points of view or in aid of certain purposes a classification discriminating between residents or non-residents has a basis, not wholly illusory, in policy or reason. There is no occasion to inquire whether such a showing would suffice if we were dealing with the equal protection clause of the Fourteenth Amendment, and nothing else. We deal in fact with something more. " The power of a State to make reasonable and natural classifications for purposes of taxation is clear

and not questioned; but neither under form of classification nor otherwise can any State enforce taxing laws which in their practical operation materially abridge or impair the equality of commercial privileges secured by the Federal Constitution to citizens of the several States " (*Chalker* v. *Birmingham & N. W. Ry. Co.*, 249 U. S. 522, 526). Classification may be supported by many considerations of expediency or fairness and, none the less, may be illegal if it denies to the citizens of any State the privileges and immunities that belong to citizens of another. To put it differently, equality in such circumstances is itself the highest policy, to which other policies must bow. The Constitution so commands. Few of its commands, if any, have had an influence more profound upon the attainment and preservation of the unity of the nation (*Paul* v. *Virginia*, 8 Wall. [U. S.] 168, 180; *Travis* v. *Yale & Towne Mfg. Co.*, 252 U. S. 60, 78, cf. *Hanover Fire Ins. Co.* v. *Carr*, 47 Sup. Ct. 179.)

By the Tax Law of this State, an act that in any case is one and the same — the transfer of a parcel of real estate by will — is subjected to burdens of taxation that differ fundamentally, and not occasionally or in points of detail, according as the doer of the act is a citizen of one State or another. The distinction in form is between resident and non-resident; " but a general taxing scheme such as the one under consideration, if it discriminates against all non-residents, has the necessary effect of including in the discrimination those who are citizens of other States " (*Travis* v. *Yale & Towne Mfg. Co., supra*, at p. 79), and will stand or fall accordingly. In some instances the burden for the non-resident is vastly heavier than for the resident. It is so in this case. It is so, as we have seen, whenever the gift is to a child or a parent or a husband or wife, unless the value is very high. In other instances, as in many where the gift is to a stranger to the blood, the burden for the non-resident may be lower than for the resident. Whether

these inequalities will balance one another in the long run as applied to non-residents generally, we can do little more than guess. What is certain is that the inequalities will not balance, but will inevitably persist, whenever certain classes of non-residents — *e. g.*, children or parents — are compared with like classes of residents. What is also certain is that non-residence without more has been made the basis for the divergent burdens of one class and another. The citizen of New Jersey or Connecticut who is the owner of property in New York and who wishes to dispose of it by will, finds a body of law in New York applicable to citizens of New Jersey or Connecticut fundamentally at variance with the body applicable in like conditions to citizens of New York. He may not act upon equal terms with his neighbor who lives on the other side of the State line. The exactions for the two classes have a different operation as to each, not by accident, but of set purpose. At times heavier and at times lighter, they are never the same.

A State is not at liberty to establish varying codes of law, one for its own citizens and another, governing the same conduct, for citizens of sister States. Of course, one may not press this principle to " a· drily logical extreme " (*Noble State Bank* v. *Haskell*, 219 U. S. 104, 110). At times, the character of the act may be so affected by the residence of the actor as to call for varying regulation with a view to the attainment in the end of a truer level of equality. Thus, non-residents resorting to our courts may be compelled to give security for costs (*Canadian Northern Ry. Co.* v. *Eggen*, 252 U. S. 553, 561, 562; *Robinson* v. *Oceanic S. N. Co.*, 112 N. Y. 315, 324, 325), and travelers using our highways for motor cars may be required to submit to appropriate regulations for the service of process if accident results as an incident of travel (*Hess* v. *Pawlowski*, 274 U. S. 352). In these and like cases, the effect of the apparent discrimination is not to cast upon the

non-resident a burden heavier in its ultimate operation than the one falling upon residents, but to restore the equilibrium by withdrawing an unfair advantage. " It makes no hostile discrimination against non-residents, but tends to put them on the same footing as residents. Literal and precise equality in respect to this matter is not attainable; it is not required " (*Hess* v. *Pawlowski*, *supra*). Instances of a like order can be found in statutes prescribing the form and measure of taxation. Resident stockholders in Connecticut were paying a tax upon the value of their shares with deduction allowed for the value of real estate. Such a deduction was not allowed to non-residents. The inequality was only apparent, for residents were taxed in other ways (*Travellers Ins. Co.* v. *Conn.*, 185 U. S. 364). Domestic corporations in Louisiana paid a tax upon oil. Non-residents paid a heavier tax. Again the discrimination was only apparent, for the tax upon the foreign corporation was declared to be in lieu of others (*General Am. Tank Car Corp.* v. *Day*, 270 U. S. 367, a case involving, however, the Fourteenth Amendment rather than the guaranty under article IV of the equal privileges of citizens). In these and like cases, the difference in treatment, whatever it may have been, was made necessary by conditions inseparably interwoven with difference of residence, and was proportioned to the necessity. Only for this was it upheld.

The statute now before us does not use its discriminations to establish measure and proportion, its discords as a means to harmony. Something more is here than a failure to attain equality " with mathematical exactness " (Per STONE, J., in *General Am. Tank Car Corp.* v. *Day*, *supra*); more than an " occasional or accidental inequality due to circumstances personal to the taxpayer " (PITNEY, J., in *Travis* v. *Yale & Towne Mfg. Co.*, *supra* at p. 80). What is here is an inequality that is purposed and pervasive. The Supreme Court held in *Travis* v. *Yale*

& *Towne Mfg. Co.* (*supra*) that a State income tax was void in its application to non-residents for failure to accord to them the exemption of $2,000 accorded by the same State to residents. Deeper by far and wider is the difference of treatment here. To discrimination in respect of exemption there is added discrimination in respect of rates. A special burden laid upon the members of a group as the price of a given act does not cease to be discrimination because a special privilege is granted in connection with another and unrelated act. One who wishes to do the first may never wish to do the second. It is small comfort to a parent who plans a gift of land of the value of $5,000 for the benefit of his child to learn that he would be a gainer by the new tax if he were giving land of the value of a million dollars to a cousin or a friend. No doubt a taxing system may be upheld though " occasionally and incidentally " (*Maxwell* v. *Bugbee,* 250 U. S. 525, 543) individuals may suffer. In the case cited the formula of apportionment was framed to produce equality. The court let it stand though there was evidence that in a few instances it resulted in inequality. What was general prevailed over what was unintended and exceptional. The inequalities wrought by this enactment have not been kept within those limits. Great classes of persons, all or nearly all who bear a close relation to those who take the gift, many, though not all, whose relation is more distant, must pay a penalty to the tax-gatherer because of their non-residence. This is hostile discrimination, however generous the profession of benevolent paternalism.

The State does not contend that the new system was adopted as a check upon evasion. Evasion as to subject-matter is impossible when the thing to be transferred is land. Evasion as to deductions is a danger almost equal whether the transfer is the act of non-resident or of resident. The absence of such a motive is indeed attested by the fact that now as of old there must be an accounting

for debts and expenses, if the executor or administrator does not elect to forego it. The State does not insist upon the flat rate which avoids the computation of the net value of the gift. The choice is for the taxpayer. We have no thought to deny the power of the State to offer an alternative method of taxation to non-residents who prefer it. The alternative may not be granted as the price of escape from a discriminatory burden. The Legislature has been unwilling to put in force for its own citizens a system taxing at a single rate the gift of the humble worker for the support of wife or child and the gift of the banker or the merchant prince to distant relatives or friends. A set of rules believed to be intolerable for residents has been established against others. Courts will be slow to say that all this can be done without other discrimination than is benignant and beneficent.

Much has been said in argument about the desire of the Tax Commission and the Legislature to avoid multiple taxation. There is a section of the statute to the effect that the tax shall not be payable " if the transferor is a resident of a state or territory of the United States which at the time of the transfer did not impose a transfer tax or death tax of any character in respect of personal property within said state or territory of residents of this state," or if the laws of such State or Territory contain other provisions insuring reciprocity of treatment (§ 248-p). The power of the State to forego a tax upon a transfer by a non-resident in order to give effect thereby to a plan of reciprocity does not mean that a tax may be imposed at excessive or unequal rates when reciprocity is lacking.

The principle of equal treatment for the citizens of all the States is a good more precious than the gain of revenue in one year or another. We are not to whittle it down by refinement of exception or by the implication of a reciprocal advantage that is merely trivial or specious. The principle is put in jeopardy — there is set in it an

entering wedge that may be the beginning of its destruction — if this statute is upheld.

The order of the Appellate Division should be reversed and the determination of the State Tax Commission annulled, with costs in all courts.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.