RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, v. TAX COURT, Respondent. ISABEL PÉREZ VAHAMONDE, Intervener.

No. 124. Argued July 1, 1947.—Decided March 8, 1948.

*Luis Negrón Fernández,* Attorney General and *Elmer Toro Luccheti,* Assistant Attorney General for the petitioner. *Otero Suro & Otero Suro,* for the intervener, complainant in the main action.

Mr. Justice Snyder delivered the opinion of the Court.

In *Fiddler* v. *Tax Court,* 65 P.R.R. 189, and *Buscaglia, Treas.,* v. *Tax Court and Ahumada, Intervenor,* 65 P.R.R. 921, we held that §§ 12(*a*) and 18 of the Income Tax as they read from 1936 to 1940 were invalid to the extent that they (1) imposed a higher rate of normal tax upon nonresidents who were not citizens of Puerto Rico than was imposed upon residents and (2) denied such nonresidents a personal exemption and credits for dependents. This case requires re-examination of the doctrine laid down in those cases.

The *Ahumada* case is pending in the Circuit Court of Appeals. The *Fiddler* case also went to that Court, but the latter did not pass on the validity of §§ 12(*a*) and 18. Instead, after calling attention to Article 183 of Income Tax Regulations No. 1,[1] it set aside our judgment and remanded

---

[1] Article 183 reads as follows:

"Article 183.—Definition.—A 'nonresident individual not a citizen of Puerto Rico' means an individual (*a*) whose residence is not within Puerto Rico and (*b*) who is not a citizen of Puerto Rico. An individual actually present in Puerto Rico who is not a mere transient or sojourner is a resident of Puerto Rico for purposes of the income tax. Whether he is a transient or not is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in Puerto Rico and

the case for a finding of fact as to whether the taxpayer was a resident of Puerto Rico within the meaning of the Income Tax Act, even though he was domiciled in Connecticut. *Buscaglia* v. *Fiddler,* 157 F.(2) 579 (C.C.A. 1st, 1946).

The first question we must determine is if the Tax Court was correct in holding that in 1943 the taxpayer was not a resident of Puerto Rico and was not a citizen of Puerto Rico.

■ A taxpayer is not classified as a nonresident of Puerto Rico under the Income Tax Act merely because he is domiciled outside Puerto Rico. He may for income tax purposes "reside" in Puerto Rico although he is domiciled elsewhere. *Buscaglia* v. *Fiddler, supra;* Article 183, Income Tax Regulations No. 1. Cf. Annotation, 82 A.L.R. 982; *Wood* v. *Tawes,* 28 A. (2) 850 (Md., 1942) cert. denied 318 U.S. 788; *Mitchell* v. *Delaware State Tax Com'r,* 42 A. (2) 19 (Del., 1945); *Phillips* v. *South Carolina Tax Commission,* 12 S.E. (2) 13 (SC., 1940).

■ On the other hand, citizenship of Puerto Rico is predicated on domicile in Puerto Rico. Under both § 2(a)(7) of the Income Tax Act[2] and §§ 5 and 5(a) of the Organic Act,[3] the "residence" which makes a person a citizen of

has no definite intention as to his stay, he is a resident. One who comes to Puerto Rico for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the individual makes his home temporarily in Puerto Rico, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. A foreign corporation is one which is not domestic.

See Article 6."

Article 183 is patterned after the equivalent Federal regulation for nonresident aliens. 8 Mertens, Law of Federal *Income Taxation,* § 45.08, p. 249.

[2] We hereinafter reject the contention that, for income tax purposes, § 2(a) (7) provides a different test for citizenship of Puerto Rico than that found in the Organic Act.

[3] By express provision of § 5 of the Organic Act (now incorporated in the Nationality Act of 1940, c. 876, 54 Stat. 1137, § 202) all citizens of Puerto Rico were declared to be citizens of the United States. And under § 5a a citizen of the United States "residing" in Puerto Rico for one year becomes a citizen of Puerto Rico. Act of March 4, 1927, c. 503, 44 Stat. 1418, § 2; 48 U.S C. § 733a.

Puerto Rico is equivalent to domicile. Consequently, both for income tax purposes and generally, a citizen of Puerto Rico who changes his domicile by moving permanently to a State or foreign country loses his status as a citizen of Puerto Rico, although he remains an American citizen. *Lókpez* v. *Fernández*, 61 P.R.R. 503, 513–15, 520.

 Unlike the *Fiddler* case, the issue whether the taxpayer was a nonresident who was not a citizen of Puerto Rico was litigated in the Tax Court. There was no substantial dispute in the testimony before that Court. Isabel Pérez Vahamonde, the taxpayer, became an American citizen by birth in Puerto Rico. In 1923 she went to Spain, where she married Narciso Maldonado, a Spaniard. Maldonado came to Puerto Rico, accompanied by his wife and their child, in 1936. However, he was not permitted to enter Puerto Rico and he went to Santo Domingo. He remained in Santo Domingo until he was permitted, through the efforts of his wife, to come to Puerto Rico. He worked here for Méndez & Co., Inc., from 1936 to 1939. During the civil war in Spain, from July 1936 until 1939, the property Maldonado owned in Spain was in an abandoned state. When the Spanish war ended, Maldonado returned to Spain alone on a business trip and to investigate the status of his property.

On March 23, 1939 the taxpayer obtained a passport to go to Spain, where she and their child joined her husband. On September 1, 1939 World War II began, creating travel difficulties. The couple stayed in Spain during World War II, which ended in 1945. According to the testimony of an employee of Méndez & Co., the taxpayer has been endeavoring to return to Puerto Rico since the latter part of 1944.

The wife owns two houses in Puerto Rico which are the only sources of her income within Puerto Rico. Before their departure for Spain in 1939, the taxpayer and her husband obtained a loan of $11,000 or $12,000, secured by a mortgage on these houses. This debt has been paid in full.

The 1943 income tax return of the taxpayer was prepared by an employee of Méndez & Co., Inc., her agent in Puerto Rico. The return, made under oath, recites that the taxpayer is an American citizen and a citizen of Puerto Rico and that she does not reside in Puerto Rico. At the beginning of the trial in the Tax Court she was permitted to amend her complaint, which alleged that she resided in Spain, to read that she resided in Puerto Rico.

In making its findings, the Tax Court emphasized the facts that the taxpayer was in Puerto Rico with her husband and child only during the period of the civil war in Spain from 1936 to 1939; that they returned to Spain in 1939, where the taxpayer and her husband, a Spaniard, had lived for many years, as soon as the civil war ended; and that they have been in Spain since that date. The Tax Court therefore concluded that the taxpayer and her family never intended to abandon their residence in Spain while they were in Puerto Rico from 1936 to 1939.

The Tax Court found, in the light of the testimony, that the taxpayer resided in Puerto Rico until 1923, when she went to Spain; but that in view of her thirteen-year stay in Spain, where she married a Spaniard, by 1936 she had changed her residence to Spain. It also found that in 1943 she was a resident of Spain; that she had been a resident of Spain for a number of years prior to 1943; and that although she was an American citizen, she was no longer a citizen of Puerto Rico in 1943.

In reviewing decisions of the Tax Court, this Court passes only on questions of law. *Mayagüez Sugar Co.* v. *Court of Tax Appeals*, 60 P.R.R. 737, 744–45; cf. *Dobson* v. *Commissioner*, 320 U.S. 489. We find no basis for a holding that the Tax Court erred as a matter of law in finding that in 1943 the taxpayer was not a resident of Puerto Rico within the meaning of the Income Tax Act. On the contrary, even if we were empowered to pass on that question, our findings

would be the same as that of the Tax Court. Indeed, in her brief in this Court the taxpayer does not specifically dispute this particular finding.

The only finding of the Tax Court which the taxpayer challenges in her brief here is that she was not a citizen of Puerto Rico in 1943. And even on this point she does not argue that she is still a citizen of Puerto Rico within the meaning of §§ 5 and 5 a of the Organic Act. See *Lókpez* v. *Fernández, supra*. Rather she contends that the Tax Court erred in not finding that she is a citizen of Puerto Rico as defined in § 2(a)(7) of the Income Tax Act.

Section 2(a)(7) has provided since it was originally enacted, Act No. 74, Laws of Puerto Rico, 1925, that the term "citizen of Porto Rico" means "persons, whether or not residents of Porto Rico", defined as such in § 7 of the Foraker Act and § 5 of the present Organic Act. The taxpayer argues that § 2(a)(7) establishes a different test for determining the status of a person as a "citizen of Puerto Rico" from that found in §§ 5 and 5 a of the Organic Act. Her point is that for income tax purposes under § 2(a)(7) a person may be a citizen of Puerto Rico even though he resides (is domiciled) elsewhere, whereas under §§ 5 and 5 a of the Organic Act a person is a citizen of Puerto Rico only if he is domiciled here.

We find this contention untenable. The Legislature used "resident" in § 2(a)(7) in the same way it used this word throughout the Act. That is to say, under § 2(a)(7) and under the Income Tax Act generally, a person may "reside" here even if he is domiciled elsewhere; and by the same token, even if temporarily he does not "reside" here, he may under some circumstances still be domiciled here and thus still be a citizen of Puerto Rico. The latter possibility was envisaged by Article 61(B) of Income Tax Regulations No. 1 when it provided that "Citizens of Puerto Rico, wherever resident, are liable to the tax." Section 2(a)(7) therefore

does not establish a different test for determining the status of a person as a "citizen of Puerto Rico" from that found in §§ 5 and 5 a of the Organic Act. On the contrary, in defining a "citizen of Puerto Rico", it specifically adopts for the Income Tax Act the formula found in § 5 of the Organic Act. And, as we have seen, under §§ 5 and 5 a, citizenship of Puerto Rico is predicated on domicile here. Hence we conclude, contrary to the contention of the taxpayer, that under the Income Tax Act and under the Organic Act the same formula is used to determine if a person is a citizen of Puerto Rico: he must be domiciled in Puerto Rico.

We are therefore of the view that both findings of the Tax Court—(1) the taxpayer did not reside in Puerto Rico in 1943 within the meaning of the Income Tax Act and Article 183 of Income Tax Regulations No. 1; (2) the taxpayer was domiciled in Spain in 1943 and consequently, although she was at that time a citizen of the United States, she was not a citizen of Puerto Rico, as defined both in §§ 5 and 5 a of the Organic Act and § 2(a)(7) of the Income Tax Act— are fully sustained by the testimony and the applicable statutes.

█ We agree with the Tax Court that the *Fiddler* and *Ahumada* cases apply here, provided we conclude that those cases were correctly decided. The *Fiddler* case involved the taxable year ending December 31, 1936. Section 52 of the Act has always provided that a nonresident shall be taxed only on income derived from sources within Puerto Rico. Act No. 74 of 1925.

In 1936 a nonresident was required to pay a normal tax of 6 per cent on net income from sources within Puerto Rico. A resident paid a normal tax of 2 per cent on the first $3,000, 4 per cent on the next $3,000 and 6 per cent on the remainder of his net income, irrespective of its source. Section 12(a) as amended by § 3 of Act No. 102, Laws of Puerto Rico, 1936. Residents and nonresidents paid the surtax on their net in-

come exceeding $7,000 at the same rates, with nonresidents paying only on income from sources within Puerto Rico. Section 13, as amended by Act No. 102.

In 1936, for purposes of calculating the normal tax only, a resident was entitled to (1) a personal exemption of $1,000 if he was single and $2,500 if he was married, and (2) a credit of $400 for each dependent. Section 18(c)(d) of Act No. 74 of 1925. Nonresidents were denied this personal exemption and credits for dependents in calculating the normal tax. Section 18(e), as amended by § 2 of Act No. 18, Laws of Puerto Rico, 1927, Second Special Session.

The *Ahumada* case involved the taxable years 1936–1940. There were a number of changes in the Income Tax Act for 1939 and 1940, but they did not affect the result of the questions under consideration here.

The instant case involves a deficiency for the taxable year ending December 31, 1943. Just as in 1936 under § 52 in 1943 nonresidents were taxed only on income from sources within Puerto Rico.[4]

In 1943 a resident paid on his net income not exceeding $2,000 a normal tax of 5 per cent. A nonresident paid a flat 28 per cent tax on his entire net income from sources within Puerto Rico. Section 12(a), as amended by § 3 of

---

[4] There is no problem in this case with reference to § 19 of the Act, which provides the formula for ascertaining net income from sources within Puerto Rico. Section 19 remained unamended from 1925 to 1939. For 1943, § 19(a)—listing the items of gross income which nonresidents must treat as coming from sources within Puerto Rico—and § 19(b)—providing for deductions from such gross income to ascertain net income from local sources—were not, for our purposes, substantially changed. Section 11 of Act No. 31, Laws of Puerto Rico, 1941. But § 19(f), as amended by § 6 of Act No. 20, Laws of Puerto Rico, 1942, Second and Third Special Sessions, provided that deductions allowed nonresidents shall not exceed 10% of their gross income. However, the validity of § 19(f) as amended is not involved here. The Treasurer as noted hereafter did not disallow any part of the deductions of $2,825.03 from the gross income of $6,831, despite the fact that these deductions exceeded 10 per cent of the taxpayer's gross income. The Tax Court has held that the 10 per cent limitation on general deductions found in § 19(f) is invalid. *Joglar* v. *Treasurer*, 1 D.T.C. 311, 321. The Treasurer did not seek review of the *Joglar* case in this Court and apparently has acquiesced in that decision.

Act No. 20, Laws of Puerto Rico, 1942, Second and Third Special Sessions. In 1943 a resident paid surtaxes on his entire net income pursuant to the bracket into which he fitted, but a nonresident paid no surtaxes in consideration of the fact that he paid a normal tax of 28 per cent. Section 13, as amended by § 2 of Act No. 10, Laws of Puerto Rico, 1943, effective July 1, 1942.

In 1943 a resident was entitled, in calculating both the normal and the surtaxes, to a personal exemption and credits for dependents which were denied to a nonresident, except that the personal exemption for a resident was now reduced for a single person to $800 and for a married person to $2,000. Sections 18(b)(c)(d), 19 (f) as amended by §§ 10 and 11 of Act No. 31, Laws of Puerto Rico, 1941.

We turn to the facts of this particular case. In 1943 the gross income of the taxpayer from sources within Puerto Rico—the two houses she owned here—was $6,831. In her return she took general deductions of $2,825.03; a personal exemption of $2,000; and credits for two dependents amounting to $800. Thus, according to the taxpayer, her net income subject to tax was $1,205.97. She calculated the tax as though she were a resident. She paid a normal tax at 5 per cent of $1,205.97, or $60.30, and the surtax at 5 per cent of $1,205.97, or $60.30. She therefore paid a tax of $60.30 plus $60.30, or $120.60.

In his notice of deficiency the Treasurer did not dispute the general deductions of $2,825.03.[5] But he disallowed the $2,000 personal exemption and the $800 credit for two dependents. Also, he calculated the tax on $4,005.97 (the gross income of $6,831 less the general deductions of $2,825.03) at the flat rate of 28 per cent rather than 5 per cent normal tax and 5 per cent surtax. He therefore advised the taxpayer that "she should have paid a tax of $1,121.67, and notified her of a deficiency of $1,001.07, plus interest. We thus

---

[5] See footnote 4.

see that on a gross income of $6,831, which after general deductions amounted to $4,005.97, a resident would have paid a tax of $120.60; the petitioner as a nonresident was required to pay $1,001.07 more, or a total of $1,121.67.

The *Fiddler* case and the instant case are similar in that the taxpayer in both cases was denied the right to deductions for a personal exemption and credits for dependents. And the difference in the rate of taxation for residents and non-residents, as applied to the taxpayer here, is much greater than in the *Fiddler* and *Ahumada* cases. It is obvious that if these cases were correctly decided, they are controlling here. We therefore turn to the contention of the Treasurer that the *Fiddler* and *Ahumada* cases were incorrectly decided.

In the *Fiddler* case we relied in part on that portion of § 1 of the Fourteenth Amendment which provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States ... ". This was erroneous. The Fourteenth Amendment applies exclusively to States. It does not apply to Puerto Rico which is not a State but an organized territory not incorporated into the United States. *Buscaglia* v. *Ballester,* 162 F. (2) 805, 807 (C.C.A. 1st, 1947); *South Porto Rico Sugar Co.* v. *Buscaglia,* 154 F. (2) 96, 101 (C.C.A. 1st, 1946); *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F. (2) 316, 322 (C.C.A. 1st, 1946); *Roig* v. *People of Puerto Rico,* 147 F. (2) 87, 91 (C.C.A. 1st, 1945). See *Hooven & Allison Co.* v. *Evatt,* 324 U.S. 652, 673–4.

In the *Fiddler* opinion this Court did not discuss expressly Article IV, § 2, par. 1 of the Constitution, reading as follows: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." However, we did quote with approval from *Travis* v. *Yale & Towne Mfg. Co.,* 252 U.S. 60, 77–78, 79, which was decided under this constitutional provision. We also erred in this respect. Article IV, § 2, par. 1 has no application to territories. By

its express terms it protects only the privileges and immunities of a citizen of a State from abridgment in another State. *Haavik* v. *Alaska Packers Assn.*, 263 U.S. 510; *Duehay* v. *Acacia Mut. Life Ins. Co.*, 105 F. (2) 768, 775 (C.C.A., D.C., 1939).

■ We do not stop to determine the effect of the inclusion recently in § 2 of the Organic Act of a privileges and immunities clause.[6] Assuming, without deciding, that this statute went into effect immediately, on its face it applies prospectively, not retroactively. Congress did not intend that taxpayers who had paid an otherwise valid tax should be penalized in favor of other taxpayers who contested the tax and now argue that Congress came to their rescue with this statute. It therefore does not affect the liability of this taxpayer for taxes due in 1944 on 1943 income under the Income Tax Act as it read at that time.

■ In view of our conclusion that the privileges and immunities clauses play no part in this case, we find it unnecessary to examine the contention of the Treasurer that such a clause protects only the privileges and immunities of national as distinguished from state citizenship, and that the discrimination herein did not involve an infringement of the privileges and immunities of national citizenship. See *Madden* v. *Kentucky*, 309 U.S. 83, overruling *Colgate* v. *Harvey*, 296 U.S. 404; dissenting opinion in *Colgate* v. *Harvey* at pp. 443–50; *Hague* v. *C.I.O.*, 307 U.S. 496, 520, note 1; *Adamson* v. *California*, 332 U.S. 46; McGovney, Privileges or Immunities Clause, Fourteenth Amendment, 4

---

[6] Section 7 of Public Law No. 362, of August 5, 1947, reads as follows:

"Section 2 of said Organic Act (48 U.S.C., sec. 737) is amended by adding at the end thereof the following new paragraph:

" 'The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of section 2 of article IV of the Constitution of the United States.' "

Iowa L. Bull. 219, as reprinted in 2 Selected Essays on Constitutional Law 402. But cf. *Smith* v. *Loughman*, 157 N.E. 753 (N.Y., 1927).

We also held in the *Fiddler* case that the difference in tax rates and deductions violated § 2 of the Organic Act, 48 U.S.C. § 737, that the "rule of taxation in Puerto Rico shall be uniform". However, this clause does not require intrinsic uniformity; it requires only geographical uniformity throughout Puerto Rico. *South Porto Rico Sugar Co.* v. *Buscaglia, supra; Ballester* v. *Court of Tax Appeals,* 61 P.R.R. 460, 474–75, affirmed in 142 F.(2) 11, 18.

The *South Porto Rico* case involved the validity of a statute imposing higher income taxes on a foreign corporation, which was not authorized to do business in Puerto Rico and which was not doing business in Puerto Rico, than on a domestic corporation. The Circuit Court of Appeals said at p. 100:

" . . . It is well settled that the uniformity provision exacts only geographical and not intrinsic uniformity (citations). Under this rule, uniformity cannot be challenged because of an arbitrary classification unless that classification discriminates on a geographical basis. A discrimination violates the uniformity provision only where the Legislature discriminates in favor of or against persons in a particular section of the territory. Moreover, the uniformity provision of the Organic Act states that the rule of taxation in Puerto Rico shall be uniform. The Act does not say that rule of taxation of Puerto Rico shall be uniform. The taxpayer, not being in Puerto Rico, has not been subjected to a discrimination prohibited by the Act . . . "

The principle laid down by the Circuit Court in the *South Porto Rico* case applies to the facts of this case. As the statutes under consideration here do not provide for different rates of taxation at different places within Puerto Rico, they do not violate the uniformity clause, which is peculiarly territorial in context and is limited to the geographical boundaries

of Puerto Rico. In addition, the taxpayer "not being in Puerto Rico, has not been subjected to a discrimination prohibited by the [Organic] Act."[7]

The taxpayer alleged in her complaint in the Tax Court that the statutes involved herein violated § 2 of the Organic Act, providing that "No law shall be enacted in Porto Rico which shall . . . deny to any person therein the equal protection of the laws." We did not pass expressly on this contention in the *Fiddler* case, although we intimated that this clause applied to a nonresident. But here again the fact that the taxpayer is not within this jurisdiction bars her from invoking the equal protection clause. In the *South Porto Rico* case, the Circuit Court said at pp. 99–100:

"The Supreme Court held that since the Sugar Company was not authorized to do nor doing business in Puerto Rico that it was not within the jurisdiction of Puerto Rico and not entitled to the equal protection of the laws. With this holding, we agree. . . . When Congress by the Organic Act enacted for Puerto Rico provisions similar to those contained in our 'Bill of Rights' it intended them to have the same purport as the like provisions of our Constitution. *Ballester-Ripoll* v. *Board of Tax Appeals of Puerto Rico, supra,* at p. 18, cf 142 F. 2d. The word 'therein' contained in the equal protection clause of the Organic Act was intended to have the same function as the words 'within its jurisdiction' contained in the equal protection clause of the Federal Constitution. *U. S. Const. Amend.* XIV, § 1. We conclude that the Sugar Company was not

---

[7] A person who "resided" in Puerto Rico within the meaning of the Income Tax Act for a considerable portion of the year in order to earn income here might conceivably contend that he was "in" Puerto Rico within the meaning of the uniformity clause, even though he was not domiciled here. See *Buscaglia* v. *Fiddler, supra;* Article 183, Income Tax Regulations No. 1. That question does not arise here as the taxpayer was outside Puerto Rico during the entire taxable year in question. In any event, under the Act such a temporary "resident" of Puerto Rico pays income taxes at the same rates as a permanent "resident". But *quaere,* whether (1) our Act means that such a "resident" must pay taxes on his entire net income, and not simply on his net income from sources within Puerto Rico; and (2) if it were so interpreted, whether our Act would be valid as to a person who "resides" in Puerto Rico but is not a citizen of Puerto Rico and is "domiciled" elsewhere. Cf. *Wood* v. *Tawes, supra.* These two questions are not involved here. We therefore leave them open.

a person within the jurisdiction of Puerto Rico so as to be entitled to the protection afforded by § 2 of the Organic Act."

To the same effect, *Blake* v. *McClung,* 172 U.S. 239, 260–61.[8]

 Finally, the taxpayer asserts that these statutes violate the due process clause of § 2 of the Organic Act. In the *Fiddler* case we did not pass on this contention. Once more we find the applicable standard set forth in the *South Porto Rico* case at p. 100:

" 'To be unconstitutional under the due process clause a taxing statute must be so arbitrary as to amount to a confiscation or a clear and gross inequality or injustice.' Mertens, Law of Federal Taxation, Vol. 1, § 4.09. The effect of this standard has been that the due process clause of the Fifth Amendment has not often been used as a means of declaring invalid a federal tax statute. See Mr. Justice Stone dissenting in *Heiner* v. *Donnan,* 285 U. S. 312, 338, 52 S. Ct. 358, 76 L. Ed. 772. . . . The area of permissible legislation for state legislatures is extremely broad. *Wisconsin* v. *J. C. Penney Co.,* 311 U.S. 435, 444, 61 S. Ct. 246, 85 L. Ed. 267, 130 A.L.R. 1229. The discretion of the Legislature of Puerto Rico as far as local matters are concerned is not a great deal narrower. *People of Puerto Rico* v. *Shell Co.,* 302 U.S. 253, 261, 262, 58 S. Ct. 167, 82 L. Ed. 235. Moreover, the burden is on the one who attacks as invalid a legislative enactment to negative every conceivable basis which might support it. *Madden* v. *Commonwealth of Kentucky,* 309 U.S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590, 125 A.L.R. 1383; *Metropolitan Casualty Ins. Co. of New York* v. *Brownell,* 294 U.S. 580, 584, 55 S. Ct. 538, 79 L. Ed. 1070."

Compare *Neild* v. *District of Columbia,* 110 F. (2) 246, 252, 258 (C.C.A., D.C., 1940).

In approaching the problem of determining whether the classification made by the Legislature was arbitrary and capricious, we must bear in mind that the due process clause " 'was not intended to compel the State to adopt an iron rule of equal taxation' . . . " and that "the presumption of constitutionality can be overcome only by the most explicit

---

[8] Footnote 7 also applies to the equal protection clause.

demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative enactment to negative every conceivable basis which might support it." *Madden* v. *Kentucky*, 309 U.S. 83, 88; *Rivera* v. *Buscaglia,* 146 F. (2) 461, 465 (C.C.A. 1st, 1944). See *Porto Rico Telephone Co.* v. *Tax Court, ante,* p. 144.

This burden has not been sustained here. On the contrary, on the issue of higher rates of taxation, as the Circuit Court of Appeals pointed out in a somewhat similar situation in *South Porto Rico Sugar Co.* v. *Buscaglia, supra,* p. 100, the "purpose of the classification may well be to facilitate the administration of the tax laws." For example, expenses of collection may be greater for nonresidents; or it may be difficult, if not impossible, to bring a nonresident within the jurisdiction of the local courts. "In addition . . . [a resident] is more likely, through taxes paid by [his] employees and through other taxes [such as excise taxes] . . . to contribute more to the support of the government that protects the sources from which [his] income is derived than" nonresidents. *South Porto Rico Sugar Co.* v *.Buscaglia, supra,* p. 101 (matter in brackets ours).

A resident small taxpayer paid a 10 per cent tax and was entitled to a personal exemption and credits for dependents; a similar nonresident paid a 28 per cent tax without the exemption and credits.[9] The difference in the amount of the tax in the lower brackets is considerable. This particular taxpayer is being required to pay $1,121.67; if she were a resident she would pay only $120.60. But when the Act is read as a whole it is clear that she and others similarly situated have not been singled out as objects of hostile and oppressive discrimination. In addition to the possible reasons already noted for this classification, the Legislature

---

[9] These rates are now 12 per cent as against 29 per cent. Act No. 88, Laws of Puerto Rico, 1945; Act No. 433, Laws of Puerto Rico, 1947.

for reasons of administrative convenience may have undertaken to solve the vexatious problem of taxation of income of nonresidents from sources within Puerto Rico by imposing a flat rate of tax instead of the progressive rates which apply to residents. Indeed, the analogy between progressive rates for residents and different rates for residents and nonresidents, although not complete, does exist. Yet, although the uniformity clause was unsuccessfully invoked, no one has suggested that progressive rates for residents violates the due process clause. *Ballester* v. *Court of Tax Appeals,* 61 P.R.R. 460, 474, affirmed in 142 F. (2) 11, 18.

Nonresident small taxpayers undeniably suffer to some extent from this administrative device; on the other hand, except for denial of a personal exemption and credits for dependents, nonresident taxpayers with net incomes from sources within Puerto Rico in excess of $25,000 are actually favored over resident taxpayers with net incomes exceeding $25,000. We cannot say that the over-all picture shows hostile and oppressive discrimination against nonresidents, and that the taxpayer has negatived every conceivable basis that might support the classification. On the contrary, the Legislature in the exercise of its discretion and in the light of practical considerations has, just as in the case of progressive rates for residents, evolved ''an equitable method of distributing the burdens of government . . . ''. *N. Y. Ex. Rel. Cohn* v. *Graves* 300 U.S. 308, 313.

The question remains as to the personal exemption and credits for dependents. As a nonresident presumably does not incur personal living expenses in Puerto Rico, it is not capricious to deny him a personal exemption. This same reason applies to denial of credits for dependents, with the additional factor that it might be difficult, if not impossible, for the Treasurer to check the accuracy of returns claiming credits for dependents of nonresidents.

While the analogy is not complete, in the Federal Act Congress in taxing nonresident aliens has provided for different rates of taxation under certain circumstances and has limited credits and exemptions. Cf. Seghers, Federal Income Taxes on Foreign Transactions and Foreign Persons, 26 Taxes 108, 112–13 (February, 1948); 8 Mertens, Law of Federal Income Taxation, § 45.16, p. 257, *et seq.;* Angell, The Nonresident Alien: A Problem in Federal Taxation of Income, 36 Col. L. Rev. 908.

*Ballester* v. *Court of Tax Appeals, supra,* 478–83, holds that imposition of a higher rate of taxation on the income of resident aliens than on the income of resident citizens is violative of the equal protection and uniformity clauses of the Organic Act. That case is distinguishable. As already noted, a nonresident is not entitled to invoke those clauses. And, although due process was not involved in that decision, the various considerations justifying somewhat higher taxation of nonresidents are lacking in the case of resident aliens.

The Tax Court of course acted properly in following the *Fiddler* and *Ahumada* cases. But insofar as those cases held that a nonresident who is not a citizen of Puerto Rico was entitled to invoke the privileges and immunities clauses of the Constitution and the uniformity and equal protection clauses of the Organic Act, they were erroneously decided and are expressly overruled.

The decision of the Tax Court will be reversed and a judgment will be entered dismissing the complaint of the taxpayer.