Clement v Durban (2018 NY Slip Op 07693)

Clement v Durban

2018 NY Slip Op 07693 [32 NY3d 337]

November 14, 2018

Feinman, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, February 6, 2019

[*1]

Charmaine Clement, Appellant,
v
Thomas Durban et al., Respondents.

Argued October 11, 2018; decided November 14, 2018

Clement v Durban, 147 AD3d 39, affirmed.

{**32 NY3d at 339} OPINION OF THE COURT

Feinman, J.

New York's long-standing security for costs provisions treat resident and nonresident litigants differently. This appeal calls for us to decide whether, as a result of this different treatment,{**32 NY3d at 340} CPLR 8501 (a) and 8503 violate the Privileges and Immunities Clause set forth in article IV, § 2 of the United States Constitution. We conclude that they do not.
I.
When plaintiff commenced this personal injury action, she was a New York resident. Plaintiff then relocated to Georgia, prompting defendants to move, pursuant to CPLR 8501 (a) and 8503, for an order compelling plaintiff—a nonresident at the time the motion was made—to post a minimum of $500 security for costs in the event she lost the case (see CPLR 8101). Defendants also requested a stay of the proceedings pursuant to CPLR 8502 until plaintiff complied with the order. In opposition, plaintiff argued that CPLR 8501 (a) and 8503 were unconstitutional because they violate the Privileges and Immunities Clause of the Federal Constitution[FN1] by impairing nonresident plaintiffs' [*2]fundamental right of access to the courts.[FN2]
Supreme Court granted defendants' motion, opining that although access to the courts is a fundamental right protectable under the Privileges and Immunities Clause, CPLR 8501 (a) and 8503 do not bar access to the courts (2013 WL 12182302, *2 [Sup Ct, Kings County, Sept. 9, 2013, index No. 8029/2011 (trial order)]). Supreme Court further stated that security for costs provisions are common nationwide (id.).
The Appellate Division unanimously affirmed. The Court held that CPLR article 85 satisfied the standard set forth by the United States Supreme Court in Canadian Northern R. Co. v Eggen (252 US 553 [1920]), and reaffirmed in McBurney v Young (569 US 221 [2013]), that nonresidents must be given "access to the courts of the State upon terms which in themselves are reasonable and adequate for the enforcing of any rights [they] may have" (Eggen, 252 US at 562). On that basis, the Appellate Division held that "the challenged statutory {**32 NY3d at 341}provisions do not deprive noncitizens[[FN3] of New York of reasonable and adequate access to New York courts" (Clement v Durban, 147 AD3d 39, 44 [2d Dept 2016]). The Appellate Division granted plaintiff leave to appeal to this Court, certifying the question as to whether its order was properly made (2017 NY Slip Op 73199[U] [2d Dept 2017]). For the reasons which follow, we now affirm.
[*3]II.
A.
The Privileges and Immunities Clause, Article IV, § 2 of the Federal Constitution
The Privileges and Immunities Clause is the preeminent constitutional directive "to constitute the citizens of the United States [as] one people" (Hicklin v Orbeck, 437 US 518, 524 [1978] [internal quotation marks omitted]). In keeping with that goal, the Supreme Court has interpreted the clause to require "the State [to] treat all citizens, resident and nonresident, equally" and applies to only "those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity" (Baldwin v Fish & Game Comm'n of Mont., 436 US 371, 383 [1978]). The Supreme Court has identified certain "fundamental" privileges protected under the Privileges and Immunities Clause, which include "[nonresidents'] pursuit of common callings within the State; in the ownership and disposition of privately held property within the State; and in access to the courts of the State" (id. [citations omitted]; see also Blake v McClung, 172 US 239, 249 [1898] [emphasizing the essential importance of "(t)he right of a citizen of one State . . . to institute and maintain actions of any kind in the courts of (any other) State"]). Initially, the Court framed nonresidents' constitutional right to access to the courts broadly, declaring that "[t]he right to sue and defend in the courts . . . must be allowed by each State to the citizens of all other States to the precise extent that it is allowed to its own citizens" (Chambers v Baltimore & Ohio R. Co., 207 US 142, 148, 149 [1907]; see also Miles v Illinois Central R. Co., 315 US 698, 704 [1942]{**32 NY3d at 342} [prohibiting states from restricting their own citizens from litigating federal rights in other states' courts]; McKnett v St. Louis & San Francisco R. Co., 292 US 230, 234 [1934]).
Neither the Supreme Court nor this Court has insisted on equal treatment for nonresidents "to a drily logical extreme" (Smith v Loughman, 245 NY 486, 493 [1927] [internal quotation marks and citation omitted]; see also Eggen, 252 US at 562 [disparate terms of Minnesota borrowing statute impacting nonresidents were constitutionally permissible "even though they may not be technically and precisely the same in extent as those accorded to resident citizens"]). The Supreme Court has made clear that "the privileges and immunities clause is not an absolute" (Toomer v Witsell, 334 US 385, 396 [1948]; see also United Building & Constr. Trades Council of Camden Cty. v Mayor & Council of Camden, 465 US 208, 218 [1984] ["Not all forms of discrimination against citizens of other States are constitutionally suspect"]; City of New York v State of New York, 94 NY2d 577, 593 [2000]). Rather, as the Supreme Court has explained, the Privileges and Immunities Clause prevents a state from imposing only "unreasonable" burdens on nonresidents, including with respect to access to the courts of the state (see e.g. Baldwin, 436 US at 383). In the specific context of access to the courts, the Supreme Court has held that "[t]he Privileges and Immunities Clause does not require States to erase any distinction between citizens and noncitizens that might conceivably give state citizens some detectable litigation advantage" (McBurney, 569 US at 231).
Indeed, a state is not prohibited from using "state citizenship or residency . . . to distinguish among persons" (Baldwin, 436 US at 383) so long as "there are perfectly valid independent reasons for [the disparate treatment]" (Toomer, 334 US at 396; see also Matter of Gordon, 48 NY2d 266, 271 [1979] [noting that the clause was intended to prevent states "from discriminating against nonresidents merely to further (their) own parochial interests or those of (their) residents"]). Therefore, any inquiry concerning a state's compliance with the Privileges and Immunities Clause "must . . . be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures" (Toomer, 334 US at 396; see also id. at 398 [a valid independent reason includes "something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed"]). For example, as this Court has clearly {**32 NY3d at 343}delineated, states may distinguish between residents and nonresidents where the purpose is to "withdraw[ ] an unfair advantage" that a nonresident would otherwise possess "with a view to the attainment in the end of a truer level of equality" (Smith, 245 NY at 493-494). Indeed, this Court has recognized, at least in dicta, that provisions requiring nonresident litigants to post security for costs are a prime example of disparate treatment that does not violate the Privileges and Immunities Clause (see Salla v County of Monroe of State of N.Y., 48 NY2d 514, 521 [1979]; Smith, 245 NY at 493).
[*4]
A two-step inquiry governs Privileges and Immunities Clause challenges to statutes providing for disparate treatment on the basis of residency. First, "the Court must decide whether the [statute] burdens one of those privileges and immunities protected by the Clause" (United Building & Constr. Trades Council of Camden Cty., 465 US at 218). When the provision implicates access to the courts, the court must assess whether nonresidents are given access on "reasonable and adequate [terms] for the enforcing of any rights [they] may have" (Eggen, 252 US at 562 [opining that the "power (resides) in the courts . . . to determine the adequacy and reasonableness of such terms"]; see McBurney, 569 US at 224, 232 [citizen-only Virginia FOIA provision "d(id) not impermissibly burden noncitizens' ability to access (Virginia's) courts" because noncitizens had access to "most of the information that they sought" through other avenues (emphasis added)]). If nonresidents are provided reasonable and adequate access to the courts, even if not on terms that are "technically and precisely the same in extent as those accorded to resident citizens," then the "constitutional requirement is satisfied," inasmuch as no fundamental right protected by the Privileges and Immunities Clause has been burdened (McBurney, 569 US at 231 [internal quotation marks omitted]).
[1] Second, should the court determine that the plaintiff's exercise of a fundamental right has been impinged, the burden shifts to the defendants, who have the opportunity to prove that the challenged restriction should be upheld even though it "deprives nonresidents of a protected privilege" (Friedman, 487 US at 65; see also Schoenefeld v Schneiderman, 821 F3d 273, 280-281 [2d Cir 2016], cert denied 581 US &mdash, 137 S Ct 1580 [2017]). The court should "invalidate [the challenged restriction] only if [it] conclude[s] that the restriction is not closely related to the advancement of a substantial state interest" (Friedman{**32 NY3d at 344}, 487 US at 65). "[A] State may defend its position by demonstrating that '(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective' " (Lunding v New York Tax Appeals Tribunal, 522 US 287, 298 [1998], quoting Supreme Court of N. H. v Piper, 470 US 274, 284 [1985]).[FN4] [*5]B.
Security for Costs
Statutes or court rules mandating that nonresident plaintiffs post security for anticipated costs for which they may be responsible if they lose their cases are a fixture in states across the country, including New York (see e.g. Minn Stat § 549.18; Mont Code Ann § 25-10-601; Nev Rev Stat § 18.130; Ohio Rev Code Ann § 2323.30; SD Codified Laws § 15-9-1; Wash Rev Code § 4.84.210; Wis Stat Ann § 814.28; see also Alaska Stat Ann § 09.60.060; Ark Code Ann § 16-68-301; Cal Civ Proc Code § 1030; Colo Rev Stat Ann § 13-16-101 [2]; 735 Ill Comp Stat 5/5-101; Iowa Code Ann § 621.1; Me Rev Stat Ann tit 14, § 601; Miss R Civ Pro 3 [b]; NJ Stat Ann § 2A:15-67; Va Code Ann § 17.1-607; DC Code Ann § 15-703; 7 Guam Code Ann § 26616). Specifically, New York's directive, contained primarily in section 8501 (a) of the CPLR, states in relevant part, as follows:
"Except where the plaintiff has been granted permission to proceed as a poor person or is the petitioner in a habeas corpus proceeding, upon motion by the defendant without notice, the court or a judge thereof shall order security for costs to be given by the plaintiffs where none of them is . . . a {**32 NY3d at 345}resident of the state when the motion is made" (CPLR 8501 [a]).
Section 8501 (a) expressly identifies limited circumstances in which nonresident plaintiffs do not have to post costs, including where the plaintiff qualifies for poor persons' relief (CPLR 8501 [a]; see also CPLR 1101). CPLR 8503 specifies that the security "shall be given by an undertaking" of $500 in counties within New York City and $250 in all other counties, although the court retains the discretion to fix "such greater amount" as necessary, depending on the circumstances of the case and the degree of record support. Should the plaintiff refuse to post security ordered by the court within 30 days of the order staying the action, the court "may" dismiss the complaint (CPLR 8502). The legislative history for CPLR article 85 indicates that mandatory security for costs was "carried over from present statutes and case law" and was intended "to obviate the danger of the property being placed beyond reach of a court's process by a plaintiff, who has been ordered to pay the costs of litigation" (3d Preliminary Rep of Advisory Comm on Prac and Pro at 443, 446, 1959 NY Legis Doc No. 17).
III.
We now turn to the first step of the inquiry, i.e., whether sections 8501 (a) and 8503 of the CPLR impair nonresident plaintiffs' fundamental right to access the courts.
[2] As an initial matter, we reject plaintiff's assertion that she has met her burden simply by identifying a facially discriminatory restriction that relates to a protectable fundamental right. The Supreme Court's jurisprudence unequivocally holds that "the constitutional requirement [set forth in the Privileges and Immunities Clause] is satisfied if . . . non-resident[s] [are] given [reasonable and adequate] access to the courts of the State," even if the access is not "technically and precisely the same in extent as [that] accorded to resident citizens" (Eggen, 252 US at 562; see McBurney, 569 US at 231). To that end, disparate terms of access to the courts for nonresident plaintiffs, such as those contained in CPLR 8501 (a) and 8503, may comply with the Privileges and Immunities Clause "even though they may not be technically and precisely the same in extent as those accorded to resident citizens" (Eggen, 252 US at 561-562).
[3] We hold that the security for costs provisions at issue here do not violate the Privileges and Immunities Clause{**32 NY3d at 346} because nonresidents are provided reasonable and adequate access to the New York courts. We are guided by several decisions from the Supreme Court which cite security for costs provisions as an example of statutes that do not violate the Privileges and Immunities Clause (see Blake, 172 US at 248, 256 [identifying security for costs provisions as constitutional impediments to access to the courts]; Eggen, 252 US at 561 [1920] [same]; Kentucky Finance Corp. v Paramount Auto Exchange Corp., 262 US 544, 545-546 [1923] [same]; see also Salla, 48 NY2d at 521 [noting same, relying on Blake, 172 US at 256-257]; Smith, 245 NY at 493 [noting same, relying on Eggen, 252 US at 561]). Our holding aligns with a national understanding, as reflected by a nearly uniform body of decisions from state courts across the country, which have held this explicitly as to their analogous respective statutes (see e.g. Landise v Mauro, 141 A3d 1067, 1076 [DC 2016] [District of Columbia statute]; Kilmer v Groome, 6 Pa D 540, 540 [Ct Com Pl 1897] [Pennsylvania statute]; Haney v Marshall, 9 Md 194, 209-210 [1856] [Maryland statute]).[FN5]
For these reasons, we conclude that sections 8501 (a) and 8503 do not unduly burden nonresidents' fundamental right to access the courts because they impose marginal, recoverable security for costs on only those nonresident plaintiffs who do not qualify for poor persons' status pursuant to CPLR 1101, or fit any other statutory exemption. Where these nonresident plaintiffs do not prevail in their litigation, they must pay the same costs required of non-prevailing residents, but are simply required to post the security applied to those costs at an earlier date. Conversely, should nonresident plaintiffs prevail, their security is refunded, with any accrued interest (see Smith, 245 NY at 493-494 ["the effect of the apparent discrimination is not to cast upon the non-resident a burden heavier in its ultimate operation than the one falling upon residents, but to restore the equilibrium by withdrawing an unfair advantage"]; see also CPLR 2601, 2605, 2607). Even if, as plaintiff contends, this provides resident litigants with "some detectable litigation advantage" (McBurney, 569 US at 231), imposing a "relatively {**32 NY3d at 347}minor hardship" (Landise, 141 A3d at 1076) on a limited class of nonresident plaintiffs is not enough to constitute an impermissible burden, such that nonresident plaintiffs do not have reasonable and adequate access to the courts.
Plaintiff's failure to make an initial showing that CPLR article 85 impairs her fundamental right of access to our courts is dispositive. Therefore, we do not address either defendants' proffered bases for the provisions or the closeness of the relationship between those bases and the disparate treatment of nonresident plaintiffs under the statutory scheme.
IV.
Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Garcia and Wilson concur.
Order affirmed, with costs, and certified question answered in the affirmative.

Footnotes

Footnote 1:Plaintiff now argues that the relevant provisions of CPLR article 85 impermissibly burden her access to the courts in violation of the Privileges and Immunities Clause contained in the 14th Amendment of the US Constitution, and violate her right to travel interstate in violation of both Privileges and Immunities Clauses. These arguments are unpreserved because plaintiff failed to raise them in Supreme Court. We reject plaintiff's claim that raising these issues for the first time in the Appellate Division adequately preserves them for our review (see Bingham v New York City Tr. Auth., 99 NY2d 355, 359 [2003]).

Footnote 2:Though notified of plaintiff's challenge, the New York Attorney General chose not to intervene to defend the constitutionality of the provisions.

Footnote 3:Although the Privileges and Immunities Clause and many of the cases interpreting it use the term "citizens," "for analytic purposes citizenship and residency are essentially interchangeable" (Supreme Court of Va. v Friedman, 487 US 59, 64 [1988]).

Footnote 4:[1] To the extent the Appellate Division's statement that "when the privilege at issue is the right to access the courts, the U.S. Supreme Court has not required a state to [demonstrate that the restriction is closely related to the advancement of a substantial state interest]" implies that the Supreme Court has imposed a lower standard where the privilege is access to the courts, that statement is not precisely correct (Clement, 147 AD3d at 46). If a court has determined that the provision at issue does not inhibit reasonable and adequate access to the courts, the provision does not unduly impinge on a fundamental right implicated by the Privileges and Immunities Clause, which "obviat[es] the need for a tailoring inquiry" with regard to whether the state could otherwise justify a restriction imposing disparate treatment by residency (see Schoenefeld, 821 F3d at 280-281).

Footnote 5:In the only case in which a state's or territory's high court found that a security for costs provision violated the Privileges and Immunities Clause, the court had imposed a $6,000 security requirement—significantly more burdensome than the more modest $500 imposed here (see Gerace v Bentley, 65 VI 289, 310-311 [2016], cert dismissed sub nom. Vooys v Bentley, 901 F3d 172 [3d Cir 2018]).