## CUMMINGS v. WINGO.

1. An order of court required plaintiff to file security for costs by the first day of the next term of court, or be non-suited. An undertaking for costs signed by plaintiff and a surety, witnessed by plaintiff's attorney, was left with the clerk of court before the day named, but the signature of the surety was not witnessed by the clerk nor the sufficiency of the security approved by him, as required by law, until after the day limited. *Held*, that the signature not having been witnessed nor the security approved within the time limited, there was not such a compliance with the order as the law requires, and therefore the non-suit became operative.

2. This order of court was such a final order as authorized the entry of judgment, and therefore a judge at a succeeding term could not rescind or modify it, or relieve the plaintiff from the consequences of his omission to comply within the prescribed time. *McMillan* v. *McCall*, 2 S. C., 390, disapproved.

3. *It seems* that defendant did not waive his right to enter judgment of non-suit by joining plaintiff in taking the testimony of a witness before the order of non-suit was granted, or in filing cross-interrogatories under protest, after the time limited by the order had expired.

4. The statute and rule of court permitting security for costs to be required from non-residents do not conflict with the provision in the Constitution of the United States (art. IV., § 2), which declares that "the citizens of each State shall be entitled to all privileges and immunities of the citizens in the several States;" for in this matter the discrimination is not against citizens of other States, but only against non-residents.

5. The order of court requiring security for costs not having been excepted to or appealed from, the question of constitutionality is considered only *ex gratia.*

Before NORTON, J., Spartanburg, October, 1887.

Action by Anson W. Cummings against William J. Wingo and W. T. Robertson on a sealed note, commenced in February, 1887. The opinion fully states the case.

*Messrs. Bomar & Simpson,* for appellants.

*Messrs. Duncan & Sanders,* contra.

October 19, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. This is an appeal from an order of non-suit for failure to give security for costs, within the time prescribed by a former order, and from an order refusing to set aside such order of non-suit, made at the same term.

There is but little dispute as to the facts, and as we do not think that the appeal can be sustained even under the facts as they are claimed to be by the appellant, we shall assume, for the purposes of this case, that the statement made by appellant is correct. The facts as thus stated, so far as pertinent to the questions made by the appeal, are substantially as follows: On the 28th day of March, 1887, during the first term at which the cause was at issue, Judge Aldrich granted an order, on motion of counsel for respondent, Wingo, in these words: "It appearing to the satisfaction of this court that the plaintiff is not a resident of this State * * * It is ordered, that the plaintiff herein furnish security for the costs of this action by the first day of the next term of this court or be non-suited." This order, so far as appears in the record, was granted without objection, and to it no

exception seems to have been taken, and no notice of appeal from it.

A few days before the first day of the next term of the court, which it appears commenced on the 29th of July, 1887, the plaintiff's counsel, for the purpose of complying with the order, placed in the clerk's office an undertaking in the form prescribed by the rule of court, signed by the plaintiff and one Alfred Tolleson, and witnessed by the plaintiff's counsel, but the clerk of the court did not "witness the signature of the surety," nor did he approve the sufficiency of the security or mark the paper filed until the 1st day of August, 1887, after the expiration of the first day of the term.

When the case was called for trial at the next succeeding term, Judge Norton, on the 28th of October, 1887, granted an order of non-suit, upon the ground that the order of Judge Aldrich had not been complied with within the prescribed time. During the same term the plaintiff, on notice, moved before the same presiding judge for an order setting aside the order of non-suit, and granting a new hearing on the motion therefor, and further allowing plaintiff to have said cause continued on the docket for trial, without security for costs, or if not, to ask the judgment of said presiding judge that security for costs heretofore filed was and is in substantial compliance with the statute and rule of court requiring same, or if not, for an order allowing plaintiff to file proper security *nunc pro tunc*, or to supply any omission there may have been in filing security heretofore." This motion was heard by his honor, Judge Norton, upon the affidavits submitted, which are all set out in the "Case," and on the 10th November, 1887, signed an order dismissing the motion.

From this order, as well as the previous order of Judge Norton granting the non-suit, the plaintiff appeals, substantially upon the following grounds : 1st. Because the security as originally furnished was sufficiently in compliance with the law.    2nd. Because the requirements that the clerk should witness the signature of the surety and approve the sufficiency of the security were directory merely.    3rd. Because, if such requirements were mandatory, the omission of them by the clerk could be subsequently supplied.    4th. Because under section 197 of the Code, the judge

should have disregarded the defects in the undertaking as orig-
inally furnished. 5th. Because the judge erred in holding that
he had no power to grant plaintiff's motion—it not being in his
discretion to do so. 6th. Because the statute and rule of court
requiring a non resident to give security for the costs of an action
commenced by him, are in violation of section 2, article IV., of
the Constitution of the United States.

It seems to us that this case is so nearly identical in principle
with our recent decision in *Bomar* v. *A. & S. Railroad Co.*,
(30 S. C., 450, and also 9 S. E. Rep. at page 512 of the advance
sheets of that very valuable publication), that we might content
ourselves with a simple reference to that case as conclusive of
this. But in deference to the zeal and earnestness with which
this appeal has been pressed by the counsel for appellant, we
have determined to consider again the questions involved.

The grounds of appeal in this case raise these questions: 1st.
Whether the security for costs as originally furnished was a suffi-
cient compliance with the law. 2nd. If not, whether the defects
therein could not be supplied subsequent to the time prescribed
by the order of Judge Aldrich, 3rd. Whether the Circuit Judge,
under the provisions of section 197 of the Code did not have the
discretion to disregard the defects in furnishing the required
security. 4th. Whether the statute and rule of court providing
for the requirement of security for costs from a non-resident plain-
tiff are in conflict with the constitution of the United States.

As to the first question, it will be seen from an examination of
the reports of this State that so many controversies had arisen in
reference to the proper mode of complying with an order requir-
ing security for costs, that the Court of Appeals, as far back as
1834, in the case of *Boyd* v. *Graham* (2 Hill, 558), found it
necessary to prescribe a positive rule on the subject, and to de-
clare that *no other entry* should be regarded as a compliance with
such an order. The rule thus prescribed was incorporated in the
rules of court adopted in 1837 as rule 74 (*Miller's Compilation*,
p. 44), with the provision that the plaintiff might comply with an
order for security for costs, by depositing a sufficient sum of
money with the clerk.

Then the act of 1839 was passed, the terms of which are sub-

stantially incorporated in the *General Statutes* as section 743, which reads as follows: "Whenever security for costs may be ordered to be given, or may be tendered by the plaintiff in vacation or in term time, the clerk aforesaid [referring to the clerk of the Court of Common Pleas] shall witness the signature of the surety, and shall, in the first instance, judge of the sufficiency of the security; the form of the undertaking to be according to law or the rule of court on that subject, if there be no law." Then we have as rule 10 of the Circuit Court rules, now of force, the same provisions as those contained in rule 74 of the old court.

It thus appears that both the legislature and the courts have deemed it necessary to prescribe a positive rule as to the manner in which security for costs shall be given; the statute expressly requiring that the clerk "*shall* witness the signature of the surety, and *shall*, in the first instance, judge of the sufficiency of the security," leaving the form of the undertaking to be prescribed by a rule of court, until the legislature sees fit to prescribe such form, which they have not yet done.

From this review of the law upon the subject, we do not see by what authority this court can undertake to dispense with any of the requirements thus positively exacted, manifestly for the purpose of avoiding just such controversies as the present. But if there could be any doubt upon the subject, that doubt is effectually dispelled by the decision of the former Court of Appeals in the case of *Willis* v. *Potter* (9 Rich., 411), the authority of which has been distinctly recognized by the present court in the case of *Bomar* v. *A. & S. Railroad Co., supra.* In that case, as in this, the undertaking for costs had been witnessed by the attorney for plaintiff, but not by the clerk, and this was held to be no compliance, not even a substantial compliance with the order requiring security for costs, and the order of non suit was affirmed.

In that case, Munro, J., in delivering the opinion of the court, after adverting to the provision of the statute requiring that the clerk shall witness the signature of the surety, and shall, in the first instance, judge of the sufficiency of the security, and to the declaration of the rule of court, that no other form than that prescribed shall be deemed sufficient, said: "There is not the slight-

est pretence for saying that the entry of security for costs in this case was a substantial compliance with the law," adding, "that unless an order, requiring a party to enter security for costs, be strictly complied with, in conformity with the requirements of the section of the act and the rule of court referred to, the party neglecting to comply must expect to take the consequences."

That case, in its facts, is so much like the one under consideration, as to furnish conclusive authority upon the point now under discussion. The cases of *Furnan* v. *Harman* (2 McCord, 442), and *Fenet* v. *Wilson* (3 Hill, 340), cited by counsel for appellant, having been decided prior to the enactment of the statute and the adoption of the rule of court above referred to, are not applicable. It is clear, therefore, that the undertaking, as originally furnished, was not a compliance with the order requiring security for costs, inasmuch as the clerk did not witness the signature of the surety, and did not, in the first instance, approve the sufficiency of the security.

2nd. Our next inquiry is, whether the defects in the undertaking, as originally furnished, could be supplied after the time limited by the order of Judge Aldrich for giving the security. This depends upon the nature and effect of that order. If that was such a final order as authorized the entry of judgment, then it is quite clear that no succeeding Circuit Judge would have the power either to rescind or modify it. That it was such a final order, is conclusively shown by authoritative decisions in this State. In *McCollum* v. *Massey* (2 Bail., 606), it was held, that "an order for security for costs by a given day, and if the requisition is not complied with, that the plaintiffs be non-suited, is final after the expiration of the time limited. Until then, it may be modified in any shape by any judge. But if the order is not complied with, the defendant may sign judgment of non-suit, and after that, it is clear that the case is out of court, and no judge possesses the power to restore it to its former *status.*"

This doctrine has been explicitly recognized in *Fonville* v. *Richey* (2 Rich., 10), where Evans, J., used this language: "When the 1st of August was passed [the time limited for complying with the order], without security for costs being put in, the plaintiff was out of court, and judgment of non-suit might

have been entered against him." To the same effect see *Burke* v. *Dillingham*, 8 Rich., 256; *McKellar* v. *Parker*, 29 S. C., 237; and *Bomar* v. *A. & S. Railroad Company*, *supra*. The case of *McMillan* v. *McCall* (2 S. C., 390), relied on by counsel for appellant, was decided by a divided court, and is so wholly at variance both with previous and subsequent decisions, as to render it a very unsafe guide. The case of *Williams* v. *Connor* (14 *Id.*, 621), also relied on by appellant, is not in point, for, as was said in Bomar's case, *supra*, "there the order requiring security for costs imposed no penalty for a non-compliance with its terms. It did not provide, as here, that the plaintiffs, on failing to comply. should be non-suited. It did not authorize the entry of a judgment, and was not, therefore, final in its character." Upon that ground alone that decision turned, and hence it is not applicable in a case like this, where the original order, requiring security for costs to be entered within a specified time, distinctly provided that a failure to comply within that time, should entitle the defendant to enter judgment of non-suit.

So that the only question for Judge Norton to determine in this case was, whether the order of Judge Aldrich had been complied with within the prescribed time. If it had not, then the order of non-suit followed necessarily, and he had no power to consider any other question; he had no discretion in the matter. He could only consider the question of fact—what was done towards complying with the order of Judge Aldrich—and the question of law—whether that which was done was a legal compliance with the order. Indeed, as was said in Bomar's case, "we do not see why a defendant could not, at once, upon the expiration of the time limited, enter judgment of non-suit without any further order to that effect; though, perhaps, the safer and better practice would be to obtain such further order, finally adjudicating the fact that the security for costs had not been entered within the time allowed for that purpose." That, manifestly, was the opinion of that great judge, Evans, as is shown by the quotation from *Fonville* v. *Richey*, *supra*.

Speaking of that case, it may be as well to mention, that, notwithstanding this doctrine, it was held in that case, that a defendant, by pleading to the declaration *after* the expiration of the

time limited for entering security for costs, would waive the right to enter judgment of non-suit; for in the case now under consideration, the point seems to have been made in the court below, though not in this court, that the defendant had waived his right to a non-suit, 1st, by joining with plaintiff in taking testimony before the clerk, under the act for that purpose; 2nd, by uniting with plaintiff's attorney in examining a witness by commission. But as the examination before the clerk took place *before* the order of Judge Aldrich was passed, and as the attorneys for defendants, when they put in their cross-interrogatories, did so under protest, expressly reserving their rights to insist that the plaintiff was out of court, it is very manifest that there was no waiver in this case; and it is probably for this reason that the counsel for appellant makes no such point in this court.

As to the third question, we think it is clear, from what has already been said, that the Circuit Judge had no discretion to relieve the plaintiff from his omission to comply with the order of his predecessor, Judge Aldrich.

The only remaining inquiry is as to the constitutionality of the act and rule of court requiring a non-resident plaintiff to enter security for the costs of the action. We might, as we did in Bomar's case, *supra*, decline to consider this question, upon the ground that it is made too late. The order of Judge Aldrich not having been excepted to, or appealed from, must be regarded as finally adjudicating the question of the defendant's right to demand security for costs in this case. As between the parties, it is the law of this case, and, whether right or wrong, cannot now be properly considered, inasmuch as no question of jurisdiction is involved; for it is not, and cannot be, questioned that Judge Aldrich had jurisdiction to determine the question presented to him. But as this is an important question, we will *ex gratia* give our views upon the subject, without attempting anything like an elaborate discussion of it.

Although orders requiring security for costs have been very frequently passed, we have not been cited to a single decision as to the constitutional question now presented, nor have we been able to find one. Indeed, it is a little singular that, except Bomar's case, *supra*, we have been able to find but one single case

(*Furnan* v. *Harman*, 2 McCord, 442) in which the question has even been suggested; and in that case the court, resting its decision upon another ground, makes no allusion to the constitutional question. While this fact affords strong evidence of the constitutionality of the law in question, yet it is not conclusive, and, therefore, we must look further into the question.

The appellant rests his position upon the 2nd section of the 4th article of the Constitution of the United States, which reads as follows: "The citizens of each State shall be entitled to all privileges and immunities of the citizens in the several States;" and the argument is, that any provision which exacts of a citizen of another State, as a condition precedent to his maintaining an action in the courts of this State, any burden not exacted from a citizen of this State, is discriminating legislation in favor of the one and against the other, which it was the design of the section quoted to prohibit. *Paul* v. *Virginia*, 8 Wall., at page 180.

It will be observed, that, by the express terms of the constitution, the purpose of the section under consideration is to secure to *citizens* of one State the same privileges and immunities as are enjoyed by *citizens* of other States, and the Supreme Court of the United States has held that the privileges and immunities thus secured are those only which grow out of citizenship. *Conner* v. *Elliot*, 18 How., 591. As was said by Mr. Justice Miller, in delivering the opinion of the court in the *Slaughter House Cases* (16 Wall., at page 76), adopting the language of Mr. Justice Washington in *Corfield* v. *Coryell*, 4 Wash. C. C., 371: "We feel no hesitation in confining these expressions to those privileges and immunities which are *fundamental*, &c., * * * rights belonging to the individual as a citizen of the State."

Now, the provisions of our statute and rule of court make no discrimination against *citizens* of another State *as such*. They do not deny to the citizens of another State the right to maintain an action in the courts of this State upon the same terms as a citizen of this State may do, because he is a citizen of another State. The provisions relate only to *residence* and not to citizenship, which are entirely different things. As was said by Mr. Justice Grier in *Parker* v. *Overman* (18 How., 137): "Citizenship and residence are not synonymous terms"; "or, as was said

by Mr. Justice Harlan in *Robertson* v. *Cease* (97 U. S., at page 648), "Citizenship and residence, as often declared by this court, are not synonymous terms." To same effect, see *Grace* v. *American Ins. Co.*, 109 U. S., 278, and *Menard* v. *Goggan*, 121 *Id.*, 253.

Having thus shown that citizenship and residence are regarded by the tribunal of last resort, in all questions involving the construction of the Constitution of the United States, as distinct and different things, it does not seem to us that the provisions of our statute and rule of court, in respect to the requirement of security for costs in certain cases, are in conflict with the clause of the constitution above quoted. The security for costs is required of a party, not because he is a *citizen* of another State, but only because he is *non-resident* of this State. The requirement would apply as well to a citizen of this State, who was a non-resident at the time, as it would to a citizen of another State not residing here; and so, on the other hand, if a citizen of another State is residing here at the time, he could no more be required to enter security for costs than a citizen of this State under like circumstances.

The judgment of this court is, that the orders appealed from be affirmed.