**JOSEPH GERACE, VICTORIA VOOYS D/B/A CANE BAY BEACH BAR, Appellants/Plaintiffs**

**v.**

**MARIA BENTLEY, CB3, INC., WARREN MOSLER, CHRIS HANLEY, and CHRISMOS CANE BAY, LLC, Appellees/Defendants**

S. Ct. Civil No. 2015-0046

Supreme Court of the Virgin Islands

August 22, 2016

292

LEE J. ROHN, ESQ., RHEA R. LAWRENCE, ESQ., Law Offices of Lee J. Rohn and Associates, LLC, St. Croix, USVI, *Attorneys for Appellants*.

MARK W. ECKARD, ESQ., Hamm Eckard, LLP, St. Croix, USVI; JOEL H. HOLT, ESQ., Law Offices of Joel H. Holt, St. Thomas, USVI, *Attorneys for Appellees Warren Mosler, Chris Hanley, & Chrismos Cane Bay, LLC.*

293

MARIA BENTLEY, Amherst, NY, *Pro se.*

PAMELA R. TEPPER, ESQ., MICHAEL MOURIDY, ESQ., Department of Justice, St. Thomas, USVI, *Attorneys for Interested Party Government of the Virgin Islands.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

### (August 22, 2016)

HODGE, *Chief Justice.* Appellants Joseph Gerace and Victoria Vooys appeal from the Superior Court's April 16, 2015 opinion, which dismissed their complaint for failure to post a cost bond under title 5, section 547 of the Virgin Islands Code. For the reasons that follow, we reverse.

## I. BACKGROUND

On June 9, 2005, Gerace and Vooys sued Maria Bentley, David Bentley, CB3, Inc., Warren Mosler, Chris Hanley, and Chrismos Cane Bay, LLC for numerous causes of action, including breach of contract. Five years after filing their complaint, Gerace and Vooys voluntarily moved to dismiss David Bentley when he died while the litigation was pending, which the Superior Court permitted in a May 5, 2010 Order. When they filed the complaint, both Gerace and Vooys resided in the Virgin Islands. However, seven years after filing suit, both Vooys and Gerace left the Virgin Islands to reside in the United States mainland. On January 31, 2013, Chrismos Cane Bay, Mosler, and Hanley demanded that Gerace and Vooys post $6,000 as security — representing $1,000 for each plaintiff as to each defendant who made the request — in accordance with 5 V.I.C. § 547, which provides, in pertinent part, that

> [i]f the plaintiff resides out of the Virgin Islands or is a foreign corporation, the defendant may serve a notice requiring security for the costs which may be awarded against the plaintiff. After the service of such a notice, all proceedings in the action shall be stayed until security is given by the plaintiff.

V.I. CODE ANN. tit. 5, § 547(a).

On March 1, 2013, Vooys and Gerace filed a "Motion to Waive or in the Alternative Reduce Demand for Security Costs," which stated that they "cannot afford the security bond," (J.A. 44), that the case should not be stayed or dismissed because it "has been pending for over seven (7) years" and doing so would "violate[ ] fundamental principles of fair play and justice" as well as "constitutional due process rights guaranteed by the 14th Amendment." (J.A. 45.) Moreover, Gerace and Vooys maintained that they "continually resided on St. Croix from the time of the filing of their Complaint until [2012] when the dire economic condition on the island forced [them] to leave the island in search of employment." (*Id.*) Their filing was accompanied by affidavits in which they both averred to lacking sufficient funds to post a security bond. Chrismos Cane Bay, Mosler, and Hanley filed a reply on March 6, 2013, which, among other things, characterized Vooys and Gerace's claim of not being able to pay as "self-serving." (J.A. 53.)

The Superior Court, in an April 18, 2013 order, mandated that "*each* Plaintiff shall pay security for costs of $175.00 separately for *each* of the six named Defendants for . . . a total Security for Cost of $1050.00 for Plaintiff Joseph Gerace and $1050.00 [f]or Plaintiff Victoria Vooys separately totaling $2100.00." (J.A. 56 (emphases in original).) The order further directed Gerace and Vooys to each deposit $1050.00 with the Superior Court within thirty days.

Gerace and Vooys did not post a bond by this deadline. On May 22, 2013, Chrismos Cane Bay, Mosler, and Hanley moved to dismiss the case because section 547 provides that "[t]he court may dismiss the action if security is not given within 30 days after the service of a notice requiring security." 5 V.I.C. § 547(d). On June 4, 2013, Vooys and Gerace opposed the motion on numerous grounds, including that section 547: (1) did not apply to this case since they were residents at the time the complaint was filed; (2) cannot be enforced against an indigent plaintiff; and (3) violated the separation-of-powers doctrine embodied in the Revised Organic Act of 1954, as well as several provisions of the United States Constitution. In their June 6, 2013 reply, Chrismos Cane Bay, Mosler, and Hanley did not respond to the merits of any of these arguments, instead contending that their "response to the motion to dismiss should be stricken, or just simply ignored," because Vooys and Gerace had never filed a "timely motion to reconsider" the Superior Court's April 18, 2013 order. (J.A. 97.) On August 5, 2013, the Government of the Virgin Islands — which had

not been a party to the case — filed a response that took no position on whether Vooys and Gerace's complaint should be dismissed, but defended the constitutionality of section 547.

Nearly two years later, the Superior Court issued an April 16, 2015 opinion that dismissed Vooys and Gerace's complaint "as to all Defendants," even though only Mosler, Hanley, and Chrismos Cane Bay had sought dismissal. *Gerace v. Bentley*, 62 V.I. 254, 270 (V.I. Super. Ct. 2015). The Superior Court did not directly analyze Vooys and Gerace's constitutional claims, but rather conducted a broad survey of United States jurisdictions and ultimately concluded that the statute was valid "because the majority of jurisdictions hold that nonresident security cost bond statutes are constitutional." *Id.* at 269. The Superior Court further concluded that Vooys and Gerace failed to demonstrate that they were indigent because even though they "submitted affidavits stating that they are without sufficient funds to pay the amount of security costs demanded," those "affidavits were insufficient because they were attached to the Motion to Waive or Reduce the Demand." *Id.* According to the Superior Court, Gerace and Vooys were required to "file[ ] a motion for leave to proceed *in forma pauperis* together with affidavits." *Id.* The Superior Court never ruled on Vooys and Gerace's claim that section 547 did not apply to them because they were residents at the time they filed their complaint, or that section 547 was inconsistent with the separation-of-powers implicit in the Revised Organic Act.

Gerace and Vooys timely filed their notice of appeal with this Court on May 14, 2015. After the parties filed their briefs, this Court, in a July 22, 2015 order, recognized that Gerace and Vooys had renewed their challenge to the constitutionality of section 547 on appeal, and invited the Government to file a brief pursuant to Supreme Court Rule 22(n). The Government accepted the invitation, and filed a brief defending the statute's validity. Although all parties were given the opportunity to respond to the Government's brief, only Gerace and Vooys did so.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law." 48 U.S.C. § 1613a(d); *see also* 4 V.I.C. § 32(a) (granting this Court

jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court"). Because the Superior Court's April 16, 2015 opinion dismissed all of Vooys and Gerace's claims as to all defendants, it is a final judgment within the meaning of section 32(a). *Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566, 578 (V.I. 2012) (collecting cases).

This Court exercises plenary review of the Superior Court's application of law, while its factual findings are reviewed only for clear error. *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 436 (V.I. 2013) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)).

## B. Applicability of Section 547

■ In their appellate brief, Gerace and Vooys renew their argument that 5 V.I.C. § 547 is invalid under the Revised Organic Act and the United States Constitution. However, before considering their constitutional claims, we must first address their claim that section 547 is inapplicable to this case, since a favorable ruling on that issue would render any constitutional analysis unnecessary. *Murrell v. People*, 54 V.I. 338, 347 (V.I. 2010) ("[C]ourts possess 'an obligation . . . to avoid deciding constitutional issues needlessly.' " (quoting *Christopher v. Harbury*, 536 U.S. 403, 417, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002))).

■ Gerace and Vooys maintain that section 547 cannot apply to their case because they were unquestionably Virgin Islands residents at the time they filed their complaint, and only changed their residency years into the litigation. While Gerace and Vooys expressly made this argument in their opposition to the motion to dismiss, the Superior Court did not rule on this claim in its April 16, 2015 opinion. "As this Court has previously emphasized, a court can never exercise its discretion to simply ignore a claim that a party has brought squarely before it." *Bryan v. Fawkes*, 61 V.I. 416, 476 (V.I. 2014) (citing *Garcia v. Garcia*, 59 V.I. 758, 771 (V.I. 2013)); *accord, Austin-Casares v. Safeco Ins. Co. of America*, 310 Conn. 640, 81 A.3d 200, 208 n.11 (2013) ("[A] trial court abuses its discretion when it fails to exercise its discretion."). This failure to address an argument — even on a question of law to which this Court owes the Superior Court no deference — itself constitutes grounds for reversal. *Gov't of the V.I. v. Connor*, 60 V.I. 597, 604 (V.I. 2014). However, given that this case has languished in the Superior Court for a decade, including two years without a ruling on the motion to dismiss that gave rise to this

appeal, this Court, in order to expedite a final resolution and in the interest of judicial economy, shall address this issue — which involves a pure question of law — in the first instance. *Vanterpool v. Gov't of the V.I.*, 63 V.I. 563, 586 (V.I. 2015) (collecting cases). *See also, e.g., Anthony v. Independent Ins. Advisors, Inc.*, 56 V.I. 516, 534 (V.I. 2012) (court construes motion requesting relief filed in Superior Court, but not expressly ruled upon, as implicitly denied when the Superior Court enters a final judgment dismissing all of the movant's claims and closing the case).

As Gerace and Vooys concede in their brief, section 547 "is silent . . . on whether it applies retroactively to plaintiffs who move after the case is commenced." (Appellant's Br. 8.) They argue, however, that this Court should "give the statute its narrowest possible construction" because it "serves almost no legitimate purpose." (*Id.*) To support this argument, they rely on a decision of the United States District Court of the Virgin Islands which harshly criticized section 547 as a matter of policy:

> The statute requires non-resident plaintiffs to deposit security for costs in the event the resident defendant prevails and is awarded costs. Resident plaintiffs are not required to make such deposits. As resident plaintiffs are capable of refusing to pay an award for costs, the provision is not broadly aimed at preventing such refusals. As resident plaintiffs can be compelled to pay only through executions on the award, the provision is not broadly aimed at eliminating the need for a prevailing defendant to return to court to enforce his award. In this context, the true distinction between a resident and non-resident plaintiff is that if the former refuses to pay an award, the defendant can enforce that award here in the Virgin Islands, while if the latter refuses to pay the award, the defendant must go off-island to enforce his judgment. Thus the purpose of 5 V.I.C. § 547 is to prevent prevailing resident defendants from having to go off island to enforce an award for costs against a non-resident plaintiff.
>
> Neither the court or the legislature has been willing to apply 5 V.I.C. § 547 to effectuate its purpose. . . . It seems apparent that the court is unwilling to require plaintiffs to deposit the large sum that would truly act as security from having to resort to an off-island court. The legislature has not raised the $300.00 mandatory amount in at least 23 years, creating the inference that it too is unwilling to require the

298

amount required for actual security. The unwillingness of both the court and the legislature is understandable: the requirement of a deposit from each nonresident plaintiff which is large enough to be actual security seems a high price to pay in order to avoid the infrequent situation in which a prevailing defendant must go off-island to enforce his judgment.

. . . . The question then is: how to apply a statute whose purpose is apparently in disrepute or at least not fully endorsed by either the legislature or the court? In this situation, only a narrow construction of the statute is appropriate.

*Ingvoldstad v. Estate of Young*, 18 V.I. 346, 348-49 (D.V.I. 1981).

■ We disagree. It is true that statutes that restrict access to the courts should be strictly construed. *See, e.g., North Tex. Production Credit Ass'n v. McCurtain County Nat'l Bank*, 222 F.3d 800, 818 (10th Cir. 2000) (quoting *In re Adoption of K.M.S.*, 2000 OK CIV APP 25, 997 P.2d 856, 857 (1999)); *Mississippi Wood Preserving Co. v. Rothschild*, 201 F.2d 233, 236 (5th Cir. 1953); *In re Marriage of Lin*, 225 Cal. App. 4th 471, 170 Cal. Rptr. 3d 34, 36 (2014). However, the rules of statutory construction only apply if a statute is actually ambiguous, and thus a statute will not be strictly construed if it is otherwise clear and its terms do not support a restrictive interpretation. *See, e.g., People v. Baxter*, 49 V.I. 384, 388 (V.I. 2008); *Corber v. Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218, 1226 n.8 (9th Cir. 2014); *In re Estate of Jenkins*, 224 Ore. 144, 355 P.2d 729, 732 (1960); *Davis v. Rahkonen*, 112 Wis. 2d 385, 332 N.W.2d 855, 857 (1983). *See also, e.g., Jenkins v. Mehra*, 281 Va. 37, 704 S.E.2d 577, 583 (2011) ("[I]f the language of a statute is unambiguous, courts may not interpret the language in a way that effectively holds that the [Legislature] did not mean what it actually expressed.").

■■ While Gerace and Vooys frame their argument in terms of giving section 547 "the narrowest possible construction," (Appellant's Br. 8), in effect they are asking this Court to disregard the plain language of the statute simply because the Court may disagree with its purpose. This is tantamount to requesting that this Court rewrite or amend the Virgin Islands Code. *In re Reynolds*, 60 V.I. 330, 337 n.7 (V.I. 2014) (citing *Robles v. HOVENSA, LLC*, 49 V.I. 491, 499 (V.I. 2008)). Regardless of the merits of section 547 as a matter of policy, the fact remains that

section 547 is not ambiguous. The meaning of the phrase "[i]f the plaintiff resides out of the Virgin Islands," 5 V.I.C. § 547(a), is clear on its face. And while the Legislature did not include a limitations period on when a defendant may request security, this does not create an ambiguity as to when a demand for security may be filed; rather, the fact that the statute is silent is strong evidence that the Legislature intended for such a demand to be made at any time. *See, e.g., Goldsberry v. Frank Clendaniel, Inc.*, 48 Del. 275, 9 Terry 275, 101 A.2d 805, 806 (1953) (holding defendant may file a motion for security for costs "at any time" when statute and court rule "is silent as to the time for making the application"); *see also In re 2000-2001 Dist. Grand Jury*, 97 P.3d 921, 924 (Colo. 2004) ("If . . . a statute can be construed and applied as written, the legislature's silence on collateral matters is not this court's concern."). Consequently, the Superior Court committed no error to the extent it implicitly concluded that section 547 applied to the underlying matter notwithstanding the fact that Gerace and Vooys left the Virgin Islands after filing their complaint.

## C. Constitutionality of Section 547

■ Because we reject their claim that section 547 does not apply to a plaintiff who ceases being a Virgin Islands resident after a complaint is filed, this Court cannot provide Gerace and Vooys with full and complete relief without considering their constitutional claims.[1] For the reasons that

---

[1] In their appellate brief, Vooys and Gerace also argue that the Superior Court erred when it dismissed their case for failure to post a cost bond in accordance with section 547 without considering their claim that they were indigent and eligible to proceed without prepayment of costs or posting of security pursuant to 4 V.I.C. § 513(a). However, the Superior Court held no evidentiary hearing and made no factual findings as to indigence, but rejected their indigence claim on a purely procedural ground; specifically, that Vooys and Gerace failed to file a motion to proceed *in forma pauperis*. Consequently, even if we were to agree with Vooys and Gerace that the Superior Court erred when it failed to consider their ability to post security, this Court could only provide partial relief in the form of ordering the Superior Court to hold an evidentiary hearing on remand to permit Vooys and Gerace to prove that they are indigent. *See, e.g., In re Ruben*, 825 F.2d 977, 987 (6th Cir. 1987); *Leser v. United States*, 335 F.2d 832, 834 (9th Cir. 1964). Notably, after conducting such a hearing, the Superior Court, depending on what evidence is presented to it, could very well conclude that Vooys and Gerace are not indigent, and sustain its earlier dismissal. Because a holding that section 547 violates the Revised Organic Act or the United States Constitution would render the statute unenforceable regardless of whether or not Vooys and Gerace are indigent, we must consider those claims prior to any other claim that would provide only lesser relief. *See, e.g.,*

follow, we conclude that section 547 does not violate the separation of powers doctrine, but hold that the statute is invalid under the Equal Protection Clause of the Fourteenth Amendment as well as the Privileges and Immunities Clause found in Article IV, Section 2 of the United States Constitution.[2]

### 1. *Invalidity Under the Revised Organic Act*

■ The Revised Organic Act of 1954, 48 U.S.C. § 1541 *et seq.*, "divides the power to govern the territory between a legislative branch, 48 U.S.C. § 1571, an executive branch, *id.* § 1591, and a judicial branch, *id.* § 1611," reflecting that "Congress 'implicitly incorporated the principle of separation of powers into the law of the territory.' " *Kendall v. Russell*, 572 F.3d 126, 135, 52 V.I. 1021 (3d Cir. 2009) (quoting *Smith v. Magras*, 124 F.3d 457, 465, 37 V.I. 464 (3d Cir. 1997)). Section 21(c) of the Revised Organic Act provides that "[t]he rules governing the practice and procedure of the courts established by local law . . . shall be governed by local law or the rules promulgated by those courts." 48 U.S.C. § 1611(c).

■ In this case, the Superior Court recognized that "[t]itle 5, section 547 of the Virgin Islands Code is procedural, not substantive," in that it "does not affect the rights of the parties" but rather "involves a procedure to be followed by a non-resident plaintiff, if that plaintiff files a lawsuit in this jurisdiction." *Gerace*, 62 V.I. at 257 (citations omitted). In their appellate brief, Gerace and Vooys maintain that section 547 violates the separation-of-powers principle implicit in the Revised Organic Act

---

*V.I. Narcotics Strike Force v. Gov't of the V.I.*, 60 V.I. 204, 212 (V.I. 2013); *Gov't of the V.I. v. Ambrose*, 453 Fed. Appx. 157, 160 (3d Cir. 2011). For the same reason, the fact that the Superior Court erred when it ordered Vooys and Gerace to post a security bond with respect to David Bentley — who had been voluntarily dismissed as a defendant on May 6, 2010 — and Maria Bentley and CB3 — who never filed a demand for security in accordance with section 547 — does not preclude consideration of the constitutional claims, since the effect of the error would be to reduce the amount of the bond from $1,050 per plaintiff to $525.

[2] Gerace and Vooys also argue that section 547 violates the Due Process Clause of the Fifth Amendment, in that "[a] statute that conditions access to courts on the payment of a filing fee or other costs may violate the due-process rights of indigent litigants." (Appellants' Br. 20.) However, as noted above, the Superior Court made no finding as to whether Gerace and Vooys are in fact indigent, or possess the means to post a security bond. In the absence of such a finding, it is not possible for this Court to review their challenge under the Fifth Amendment's Due Process Clause.

because "[n]othing in [48 U.S.C.] § 1611(c) grants the Legislature the express authority to make 'local law' with respect to civil procedure, which is an express and inherent judicial function." (Appellants' Br. 16.) "Moreover," Gerace and Vooys argue that "nothing in the ROA expressly or implicitly authorizes the Legislature to make procedural rules that substantively or materially conflict with court-promulgated rules of procedure." (*Id.*) Rather, they contend that "local statutory law that is 'substantive' is the inherent province of the Legislature, while local 'procedural law' is the exclusive province of the judiciary." (*Id.*) According to Gerace and Vooys, the Superior Court's rules " 'govern the practice and procedure in the [Superior C]ourt,' " (Appellants' Br. 19 (quoting SUPER. CT. R. 1)), and "the 'stay' and 'dismissal' provisions of § 547 directly interfere with, and contradict, how cases are 'commenced' under [Superior Court] Rules 3 and 8, processed under the discovery rules 26-37, and the circumstances under which a case may be involuntarily dismissed under Rule 41(b) [of the Federal Rules of Civil Procedure]." (Appellants' Supp. Br. 2-3.)

▮ As a threshold matter, Gerace and Vooys are mistaken in their premise that the Legislature lacks any authority whatsoever to promulgate procedural rules. The Revised Organic Act, by its own terms, provides that "[t]he rules governing the practice and procedure of the courts established by local law . . . shall be governed by *local law or the rules promulgated by those courts.*" 48 U.S.C. § 1611(c) (emphases added). This Court has previously held that this provision, by its own terms, vests both the Virgin Islands Judiciary and the Virgin Islands Legislature with authority to promulgate procedural rules, while only permitting the Legislature to establish substantive rules. *Phillips v. People*, 51 V.I. 258, 275 (V.I. 2009); *Gov't of the V.I. v. Durant*, 49 V.I. 366, 373 (V.I. 2008) (citing *In re Richards*, 213 F.3d 773, 783-84, 42 V.I. 469 (3d Cir. 2000)).

▮ Nevertheless, this Court has not yet addressed the question of how to resolve a conflict between a procedural rule promulgated by the Legislature and a procedural rule promulgated by the Virgin Islands Judiciary. Although the Legislature — subject to the authority of Congress under the territorial clause of the United States Constitution — possesses the exclusive right to codify substantive law, the Revised Organic Act clearly provides the Legislature and the Judiciary with concurrent authority to promulgate procedural court rules. As Gerace and Vooys correctly note in their brief, the overwhelming majority of other

jurisdictions where the legislature and the judiciary have been vested with concurrent authority to promulgate procedural rules have held that conflicts between rules promulgated by the judiciary and rules promulgated by the legislature are resolved in favor of the judiciary. *See, e.g., Hickson v. State*, 316 Ark. 783, 875 S.W.2d 492, 493 (1994) ("Statutes are given deference only to the extent that they are compatible with our rules, and conflicts which compromise these rules are resolved with our rules remaining supreme." (citing *State v. Sypult*, 304 Ark. 5, 800 S.W.2d 402, 404 (1990))); *State v. Griffith*, 97 Idaho 52, 539 P.2d 604, 610 (1975) ("[A]s part of the rule-making power possessed by this Court, . . . the Court may by rule . . . make inapplicable procedural statutes which conflict with our present court system." (citations omitted)); *Winberry v. Salisbury*, 5 N.J. 240, 74 A.2d 406, 414 (1950) ("We therefore conclude that the rule-making power of the Supreme Court is not subject to overriding legislation, but that it is confined to practice, procedure, and administration as such."); *Waples v. Yi*, 169 Wn. 2d 152, 234 P.3d 187, 191 (2010) ("If a statute and a court rule cannot be harmonized, the court rule will generally prevail in procedural matters and the statute in substantive matters."); *accord, Adams v. Rubinow*, 157 Conn. 150, 251 A.2d 49, 56 (1968) ("The rule-making power of the [legislature] with respect to the lower courts can, and preferably should, be delegated to the Supreme Court as it has been, at least as to practice and procedure.").

Gerace and Vooys, however, are incorrect that any conflict exists between the Virgin Islands Legislature and the Virgin Islands Judiciary in this instance. Even if this Court were to assume — without deciding — that Gerace and Vooys are correct that "the 'stay' and 'dismissal' provisions of § 547 directly interfere with, and contradict," the rules promulgated by the Superior Court, (Appellants' Supp. Br. 2-3), Gerace and Vooys incorrectly presume that the Superior Court may exercise the Virgin Islands Judiciary's authority to promulgate procedural rules that may overrule those enacted by the Legislature.

█ Although the Revised Organic Act provides that "[t]he rules governing the practice and procedure of the courts established by local law . . . shall be governed by local law or the rules promulgated by those courts," 48 U.S.C. § 1611(c), the fact that Congress used the plural "courts" to grant *concurrent* rulemaking authority does not mean that it intended for every Virgin Islands court to exercise *co-equal* rulemaking authority. *Accord, City of Palm Bay v. Wells Fargo Bank, N.A.*, 114 So. 3d

303

924, 929 (Fla. 2013) ("[C]oncurrent power does not mean equal power."); *Ex parte Dep't of Mental Health*, 511 So. 2d 181, 185 (Ala. 1987) ("[C]oncurrent jurisdiction does not mean co-equal jurisdiction."); *In re William T.*, 172 Cal. App. 3d 790, 218 Cal. Rptr. 420, 425-26 (1985) ("[C]oncurrent jurisdiction does not make the jurisdiction coequal.").

 " '[W]ithin every judicial system in the United States,' including the Virgin Islands, 'courts are arranged in a pyramid,' with 'trial courts at its base' and 'a single court at the top with ultimate authority.' " *Connor*, 60 V.I. at 604 (quoting Richard K. Greenstein, *Why the Rule of Law?*, 66 LA. L. REV. 63, 71 (2005)). In such a hierarchical system, the trial court lacks the authority to take any action that conflicts with those established by a higher court or state statute. *Vanterpool*, 63 V.I. at 583 & n.10; *see Elkins v. Superior Court*, 41 Cal. 4th 1337, 63 Cal. Rptr. 3d 483, 163 P.3d 160, 166 (2007) ("A trial court is without authority to adopt local rules or procedures that conflict with statutes or with rules of court adopted by the Judicial Council, or that are inconsistent with the Constitution or case law."); *Gilbert v. Decker*, 165 Ga. App. 11, 299 S.E.2d 65, 66 (1983) ("[I]f the application of the local court rule contravenes a statute, the local rule must yield to the statute."); *People v. Williams*, 45 Mich. App. 630, 207 N.W.2d 180, 186 (1973) (holding trial court rule "lack[s] validity in the face of the statute" because "[o]nly the Michigan Supreme Court has the power to modify the provisions of a legislative enactment" relating to "the practice and procedure" of Michigan courts); *Goetz v. Harrison*, 153 Mont. 403, 457 P.2d 911, 912 (1969); *State ex rel. Chambers v. Hall*, 229 Ind. 176, 96 N.E.2d 225, 226 (1951); *accord, Ebersole v. Southeastern Pa. Transp. Auth.*, 111 A.3d 286, 290 n.2 (Pa. Commw. Ct. 2015) ("It goes without saying that the Superior Court may not overrule our Supreme Court."); 1 THE WORKS OF JAMES WILSON 495 (Robert G. McCloskey ed., 1967) ("According to the rules of judicial architecture, a system of courts should resemble a pyramid. . . . [O]ne supreme tribunal should superintend and govern all others. . . . [Otherwise] different courts might adopt different and even contradictory rules . . . .").

 It is an inherent power of any court of last resort to develop procedural rules of general applicability for the entire judicial branch, such as the rules of evidence, even if such rules contradict those adopted by a lower court. *See State v. DeJesus*, 288 Conn. 418, 953 A.2d 45, 66 (2009) (holding that statute granting the Superior Court of Connecticut the authority to establish rules of evidence could not divest the Supreme

Court of Connecticut "of its long-standing inherent common-law adjudicative authority over evidentiary law"); *accord, Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 980 (V.I. 2011) ("[W]e can find no authority for the proposition that the Legislature possesses the authority to adopt a statute which not only completely deprives this Court of the ability to exercise its supreme judicial power to shape the common law, but delegates that power to the American Law Institute and to the governments of other jurisdictions."). In contrast, a trial court may generally not adopt general practice and procedural rules unless authorized by the court of last resort. *See, e.g., In re Holcombe*, 63 V.I. 800, 843 (V.I. 2015) (concluding that all rules and regulations affecting the Virgin Islands Bar must be approved by this Court because this Court possesses exclusive authority to regulate the Virgin Islands Bar); *State v. Obeta*, 796 N.W.2d 282, 287 (Minn. 2011) (the Supreme Court of Minnesota "ha[s] the inherent judicial authority to regulate and supervise the rules that govern the admission of evidence in the lower courts"); *Bergeron ex rel. Perez v. O'Neil*, 205 Ariz. 640, 74 P.3d 952, 962 (2003) ("[A] court lacks inherent authority to issue an order that either supersedes or supplements the explicit provisions of a supreme court procedural rule unless it first adopts a local rule and receives approval of that rule from the supreme court."); *Griffith*, 539 P.2d at 610 ("[T]his Court has the inherent authority . . . to make rules governing procedure in the lower courts of this state."). This is because although judicial power may be vested in both a trial court and a court of last resort, the exercise of judicial power by a trial court is limited by the power vested in a court of last resort by virtue of its higher position in the judicial hierarchy. *See Banks*, 55 V.I. at 979 (holding that the Superior Court may exercise its judicial power to determine the common law "to the extent not bound by precedent" from the Supreme Court); *see also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995) (holding that a federal court's exercise of its judicial power to decide cases is "subject to review only by superior courts in the Article III hierarchy.").

 Congress is aware of the existence and vitality of state governments. *Connecticut Light & Power Co. v. Federal Power Commission*, 324 U.S. 515, 530, 65 S. Ct. 749, 89 L. Ed. 1150 (1945). Thus, Congress certainly intended for section 21(c) of the Revised Organic Act to be read and interpreted consistent with the universal

understanding of this hierarchical relationship between courts in a single judicial branch. *Cf. Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 298 (V.I. 2014) ("[W]hen Congress adopted the Revised Organic Act with its habeas corpus provision, it intended that the right in this Territory be interpreted consistent with the common law understanding of the writ at the time of its enactment."). To hold otherwise would require us to conclude that Congress, despite intending for the Revised Organic Act to serve as the basic charter of government for the Virgin Islands, *Todmann v. People*, 57 V.I. 540, 546 (V.I. 2012) (citing *Brow v. Farrelly*, 994 F.2d 1027, 1032, 28 V.I. 345 (3d Cir. 1993)), intended to cause chaos, confusion, and uncertainty in the law by conferring concurrent and coequal authority to multiple entities. *See International Ass'n of Machinists, AFL-CIO v. Central Airlines, Inc.*, 372 U.S. 682, 690, 83 S. Ct. 956, 10 L. Ed. 2d 67 (1963).

█ In the Virgin Islands, this Court serves as the court of last resort in which the supreme judicial power of the Territory is vested. *See* 4 V.I.C. § 2 ("The judicial power of the Territory is vested in . . . the court of last resort . . . 'The Supreme Court of the Virgin Islands.' "); 4 V.I.C. § 21 ("The Supreme Court of the Virgin Islands is established pursuant to section 21(a) of the Revised Organic Act of the Virgin Islands . . . and in it shall be reposed the supreme judicial power of the Territory."). Consequently, when the Legislature established this Court as the court of last resort for the Virgin Islands in accordance with section 21(a) of the Revised Organic Act, the Superior Court was divested of its authority to unilaterally adopt procedural rules that would override duly-enacted Virgin Islands statutes without the approval of this Court.

█ In this case, the Legislature adopted section 547 as one of the original provisions of the Virgin Islands Code, and this Court has not promulgated any contrary rule. In fact, this Court has expressly held that no rule promulgated by the Superior Court may be interpreted so as to overturn a procedural statute enacted by the Legislature. *Sweeney v. Ombres*, 60 V.I. 438, 441-42 (V.I. 2014) ("We have repeatedly instructed that Superior Court Rule 7 does not vest litigants or the Superior Court with a license to ignore Virgin Islands statutes.") (collecting cases). Thus, to the extent that there is any inconsistency between section 547 and the rules promulgated by the Superior Court, our precedent, as well as the plain language of the Revised Organic Act, compel that the statute

control. Consequently, the Legislature did not violate the separation of powers doctrine when it enacted section 547.

### 2. *Invalidity Under the United States Constitution*

Having concluded that section 547 does not violate separation of powers principles, we now turn to Vooys and Gerace's claim that the statute violates the Equal Protection Clause of the Fourteenth Amendment and the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution.[3] According to Gerace and Vooys, "the statute on its face discriminates against non-residents and . . . the purpose of the statute is suspect and does not further any real goal other than denying indigent, non-resident plaintiffs access to courts in claims against defendants located in the territory." (Appellants' Br. 23.) In other words, they maintain that "[t]he statute on its face and as applied denies non-resident plaintiffs equal protection under the law because it treats non-residents differently for irrational, impermissible, or suspect reasons, and it also treats plaintiffs and defendants differently because defendants are not required to post cost bonds." (*Id.*)

 To support their claim, Vooys and Gerace primarily rely on *Patrick v. Lynden Transport, Inc.*, 765 P.2d 1375, 1380 (Alaska 1988), which interpreted the equal protection clause of the Alaska Constitution to hold that "a bond requirement for only nonresident plaintiffs is not sufficiently related to the purpose of providing security for cost and attorney fee awards to defendants." However, because the Alaska Supreme Court reached this decision based on an interpretation of the Alaska Constitution, rather than the Fourteenth Amendment, its value even as persuasive authority is questionable, since this Court must follow, as binding precedent, decisions of the United States Supreme Court that interpret the United States Constitution. *See Chesapeake & O. Ry. Co. v. Martin*, 283 U.S. 209, 221, 51 S. Ct. 453, 75 L. Ed. 983 (1931).

 The United States Supreme Court has held that when a statute infringes upon an economic interest, equal protection is satisfied so long

---

[3] The Revised Organic Act of 1954 provides that these provisions of the United States Constitution apply to the Virgin Islands as if the Virgin Islands were a state. 48 U.S.C. § 1561 ("The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands . . . and shall have the same force and effect there as in the United States or in any State of the United States: . . . article IV, section 1 and section 2, clause 1; . . . the second sentence of section 1 of the fourteenth amendment.").

as the government shows that the statutory classification is rational. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461-63, 101 S. Ct. 715, 66 L. Ed. 2d 659 (1981). However, if a statute infringes on a fundamental right, the government must establish that the statutory classification furthers a compelling state interest utilizing the least restrictive means available. *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969), *overruled in part on other grounds*, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974).

 In its brief in defense of section 547's validity, the Government argues that "section 547 does not infringe on a fundamental right," and that it "ha[s] a rational basis for its enactment: to protect citizens in the Virgin Islands in collecting costs awarded against an off-island defendant after a suit ends and such costs are awarded." (Gov't Br. 8.) The Government ignores, however, that section 547 clearly restricts access to Virgin Islands courts for non-resident plaintiffs, since the failure to post a security bond may result in (1) all proceedings being automatically stayed; and (2) dismissal if the bond has not been paid within thirty days. Significantly, the United States Supreme Court has repeatedly held that access to the courts is a fundamental right. *See, e.g., United States v. Georgia*, 546 U.S. 151, 162, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) ("the fundamental right of access to the courts"); *Tennessee v. Lane*, 541 U.S. 509, 533, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004) (same); *Lewis v. Casey*, 518 U.S. 343, 346, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (same); *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977) (same). Consequently, because section 547 burdens a fundamental right, it is not sufficient for the Legislature to have a rational basis to enact section 547; instead, section 547 must further a compelling governmental interest and must represent the least restrictive means of doing so. *See McCullen v. Coakley*, ___ U.S. ___, 134 S. Ct. 2518, 2530, 189 L. Ed. 2d 502 (2014); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 31, 50-51, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973).

 Assuming — without deciding — that section 547 furthers a compelling governmental interest, section 547 clearly does not satisfy the least restrictive means test. When the Legislature burdens a fundamental right with a statute, the Legislature "may no more create an underinclusive statute, one that fails truly to promote its purported compelling interest, than it may create an overinclusive statute, one that encompasses more protected conduct than necessary to achieve its goal." *Church of the*

308

*Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 578, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) (Blackmun and O'Connor, JJ., concurring). To the extent the Legislature intended to make it easier for Virgin Islanders to collect a cost award, the statute is overinclusive because residency status bears little relationship to the difficulty of being able to collect a cost award; after all, a number of non-residents may own property or assets in the Virgin Islands, and thus easily be able to satisfy a cost award, while certain residents may possess very few assets in the Virgin Islands but have substantial assets in other jurisdictions. *See Patrick*, 765 P.2d at 1379. Moreover, the statute may be underinclusive by requiring only non-resident plaintiffs to post a bond. Notably, the Virgin Islands fee-shifting statute provides for a prevailing party — whether plaintiff or defendant — to recover costs and attorney's fees except in non-frivolous personal injury cases. 5 V.I.C. § 541(a)-(b). Thus, if the Legislature is concerned that a Virgin Islands resident may have difficulty collecting a cost award entered against a non-resident, there appears to be little justification for having the bond requirement apply only to non-resident plaintiffs, since non-resident defendants may also be liable for costs.

██ ██ We recognize that the underinclusiveness of section 547 could potentially be justified by rationalizing that a non-resident plaintiff has voluntarily availed himself or herself of the local court system in the Virgin Islands, while a non-resident defendant may be forced into litigation in a Virgin Islands court against his or her will. However, that rationale cannot withstand scrutiny under the Privileges and Immunities Clause. The United States Supreme Court has explained that the purpose of the Privileges and Immunities Clause is:

> to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned. It relieves them from the disabilities of alienage in other States; it inhibits discriminating legislation against them by other States; it gives them the right of free ingress into other States, and egress from them; it insures to them in other States the same freedom possessed by the citizens of those States in the acquisition and enjoyment of property and in the pursuit of happiness; and it secures to them in other States the equal protection of their laws.

*Hicklin v. Orbeck*, 437 U.S. 518, 524, 98 S. Ct. 2482, 57 L. Ed. 2d 397 (1978) (quoting *Paul v. Virginia*, 75 U.S. 168, 180, 19 L. Ed. 357 (1869)). To de-

termine whether the Privileges and Immunities Clause has been violated, a court must determine whether (1) the government discriminates against non-residents regarding a fundamental right, and (2) if so, whether there is a substantial reason for the difference in treatment that bears a substantial relationship to the State's objective. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284, 105 S. Ct. 1272, 84 L. Ed. 2d 205 (1985); *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 388, 98 S. Ct. 1852, 56 L. Ed. 2d 354 (1978).

In its April 16, 2015 opinion, the Superior Court relied on an 1897 case decided by Pennsylvania's trial court for the broad proposition that non-resident bond statutes do not violate the Privileges and Immunities Clause because they "do not interfere with the privileges and immunities of non-residents, but places them on equal footing with resident plaintiffs regarding payment of costs." *Gerace*, 62 V.I. at 259 (citing *Kilmer v. Groome*, 6 Pa. D. 540 (Pa. Ct. Com. Pl. 1897). It also cited to other cases from the late 19th century to support this broad proposition. *Gerace*, 62 V.I. at 262-63 & nn.34-37 (citing *Holt v. Tennallytown & R. Ry. Co.*, 81 Md. 219, 31 A. 809, 810 (1895) and *Cummings v. Wingo*, 31 S.C. 427, 10 S.E. 107, 110 (1888)).

Because these cases were determined well before the United States Supreme Court established its modern privileges-and-immunities jurisprudence, they have little — if any — persuasive value. For example, the South Carolina Supreme Court in *Cummings* based its decision on the fact that the Privileges and Immunities Clause refers to "citizens" while its bond statute discriminated against "non-residents," with "resident" and "citizen" constituting different concepts. 10 S.E. at 110. The United States Supreme Court, however, subsequently held "that the terms 'citizen' and 'resident' are 'essentially interchangeable' . . . for purposes of analysis of most cases under the Privileges and Immunities Clause." *United Bldg. & Constr. Trades Council of Camden Cnty. v. Mayor & Council of City of Camden*, 465 U.S. 208, 216, 104 S. Ct. 1020, 79 L. Ed. 2d 249 (1984) (quoting *Austin v. New Hampshire*, 420 U.S. 656, 662 n.8, 95 S. Ct. 1191, 43 L. Ed. 2d 530 (1975)).

██ ██ The United States Supreme Court has held that "[t]he privileges and immunities clause . . . requires a state to accord to citizens of other states substantially the same right of access to its courts as it accords to its own citizens," *McKnett v. St. Louis & S.F. Ry. Co.*, 292 U.S. 230, 233, 54 S. Ct. 690, 78 L. Ed. 1227 (1934) (citations omitted), thus

satisfying the first factor of the two-factor privileges and immunities inquiry. Significantly, the Superior Court was incorrect to rely on those cases for the proposition that section 547 simply "places [non-resident plaintiffs] on equal footing with resident plaintiffs regarding payment of costs." *Gerace*, 62 V.I. at 259. No provision of Virgin Islands law mandates that a resident plaintiff post a cost bond upon the demand of a defendant. Significantly, nothing in the Virgin Islands Code authorizes that a resident plaintiff's complaint be dismissed simply for failing to post a cost bond that had been previously ordered. Rather, these penalties are only assessed against non-resident plaintiffs. Because the clear purpose of the statute is "discrimination against nonresidents and favoritism and protectionism on behalf of residents" with respect to the fundamental right of access to the Virgin Islands court system, the statute is invalid under the Privileges and Immunities Clause. *Morris v. Crown Equipment Corp.*, 219 W. Va. 347, 633 S.E.2d 292, 299 (2006).

For these reasons, we hold that section 547 violates both the Equal Protection Clause and the Privileges and Immunities Clause of the United States Constitution. Consequently, we reinstate Vooys and Gerace's complaint with respect to all defendants.

## III. CONCLUSION

For the foregoing reasons, we conclude that section 547 applied to the underlying matter and that it does not violate the separation of powers principles inherent in the Revised Organic Act, but that the statute is nevertheless unconstitutional under both the Equal Protection Clause and the Privileges and Immunities Clause. Accordingly, we reverse the Superior Court's April 16, 2015 opinion dismissing Vooys and Gerace's complaint, vacate the April 18, 2013 order setting a cost bond, and remand the case to the Superior Court for further proceedings.